BROOKS v. McMEEKIN.

GIBSON v. SAME.

1. FINDINGS OF FACT.—This court will not interfere with findings of fact by a Circuit Judge, unless such findings are without any testimony to support them, or are against the manifest weight of the testimony.

2. EVIDENCE—LOST PAPER.—No copy of an original agreement that is alleged to have been lost can be received in evidence until every legitimate effort has been made to produce or account for the original.

3. CONVEYANCE BEFORE MARRIAGE—DOWER—FACTS.—Where a father took a deed of conveyance from his son, then in the last stages of consumption, only a few days before the son's marriage, and on the same day made an agreement to hold this land for certain uses of the widow and issue of said son, and there was evidence that the son was then very attentive to the lady whom he afterwards married, and that the father had heard of the engagement to marry, and both deed and agreement were kept secret for years, and until after the son's death, this court declined to reverse the finding of fact by the court below, that the father knew, when he took the deed, of the son's intended marriage, and that both parties intended to defeat the wife's claim of dower.

4. FINDINGS OF FACT—DOWER—RENTS—COUNTER-CLAIM.—The effect of testimony is to be determined by the judge. Where dower is claimed, improvements on the land are not a proper counter-claim. Where maintenance is made a charge, it may be offset by services rendered, and it may be that moneys, &c., received by a widow from the person in possession of her dower land should be deducted from her claim for an accounting of the dower rents and profits of her interest therein.

5. LACHES—ESTOPPEL.—Where a widow learns that a deed, innocent on its face, had been executed by her husband before marriage for the purpose of defeating her dower right, but takes no action thereunder for years afterwards, and meantime innocent third parties, without notice and for value, purchase a portion of the land embraced in her husband's deed, such purchasers are protected from the claim of the widow subsequently asserted.

6. CONVEYANCE BEFORE MARRIAGE—DOWER—FRAUD.—Where a deed of con-

veyance is executed by son to father in anticipation of the son's approaching marriage, with the intention of defeating the wife's right of dower, and such deed is concealed from the intended wife (who had known of the son's ownership), the father colluding with the son in these acts, such deed is void, because in fraud of the marital rights of the wife, based upon the valuable consideration which moves from her on her marriage, and the husband will be deemed still seized in fee of the lands so attempted to be conveyed.

7. OBITER DICTA condemned, and a remark made by Chan. Dunkin in *Peay* v. *Peay*, 2 Rich. Eq., 407, held to be an *obiter dictum*, and disapproved.

8. DOWER RENTS AND PROFITS—LIMITATION OF ACTIONS.—A widow being entitled to dower, is also entitled to rents and profits from the date of her husband's death, her claim being limited, under a plea of the statute of limitations, to the six years before action brought.

9. FRAUD—CONSIDERATION.—Where grantor and grantee combine to perpetrate a fraud, the deed is void, whether the consideration be valuable or voluntary.

10. FRAUD—CONFIRMATION.—The widow having done nothing to confirm the fraud on her rights, she is not estopped from attacking it by passively receiving at the hands of grantee a modest support from the proceeds of the land so attempted to be conveyed away in fraud.

11. FRAUD—ESTATE—TRUST.—The deed of conveyance being void for fraud, there was no estate in the grantee upon which he could predicate a trust.

Before WITHERSPOON, J., Fairfield, September, 1890.

These were two actions, one by Hattie S. Brooks against Stephen Gibson and others, commenced on June 27, 1888, and afterwards, by amended complaint, continued against Hayne McMeekin, executor of Stephen Gibson (who had died pending action), and the heirs of Stephen Gibson, and other parties claiming interest in the lands which were involved in the litigation. The other action was by S. Henry Gibson, commenced August 13, 1888, against the same parties, and in like manner amended and continued. The causes were argued on appeal December 3, 1891, before Chief Justice McIver and Justice McGowan, the only members of the court at that date. On February 20, 1892, an order was filed, directing a reargument, "as it appears that one of the main questions involved is not only important, but novel, in this State, at least, it is thought better that the causes should be heard by the full bench." The

reargument was had April. 20, 1892, all the justices being present.

The Circuit decree, omitting its statement of the pleadings, was as follows:

As a matter of fact, I find that Stephen Gibson, on the 11th of December, 1866, confessed judgment to Fisher & Lowrance for $8,153.17, on a note dated December 7th, 1866, and due three days after date; that Stephen Gibson also confessed judgment to his son, Henry A. Gibson, then living with him, on the 13th December, 1866, for $2,560; that on November 4th, 1867, the sheriff of Fairfield District sold about 2,800 acres of land as the property of Stephen Gibson for $2,300, under the Fisher & Lowrance judgment, and executed title to Henry A. Gibson; that Stephen Gibson paid his debt to Fisher & Lowrance; that the sheriff's deed to Henry A. Gibson was recorded January 29th, 1868; that Stephen and his son, Henry A. Gibson, continued to live together and cultivate the land up to death of Henry A. Gibson, on the 9th of November, 1879; that on the 21st of November, 1876, Henry A. Gibson executed and delivered to Stephen Gibson a conveyance of 2,002 acres, more or less, of land, being all the land to which he held title under the sheriff's deed; that the consideration expressed in said deed is "the good will and affection and services rendered by my father, Stephen Gibson, and of $5 to me paid by said Stephen Gibson;" that this deed was recorded June 6th, 1881, after the death of Henry A. Gibson; that Henry A. Gibson and Stephen entered into a written agreement on November 27th, 1876, whereby they agreed to cultivate the land in common, and share equally the profits after paying the debts, and by which, on final settlement, they were to divide equally the stock and farming implements. This agreement was not placed upon record.

That Henry A. Gibson married the plaintiff, Hattie S. Brooks, on the 7th of December, 1876. Henry A. Gibson died intestate, 9th of November, 1879, leaving surviving him his widow, now the plaintiff, Hattie S. Brooks, and his infant son, the plaintiff, S. Henry Gibson; that the plaintiff, Hattie S. Brooks, lived with Stephen Gibson from the death of her husband,

Henry A. Gibson, up to her marriage with Charles S. Brooks; that Hattie S. Brooks did not have knowledge or information of the execution of the deed by her husband, Henry A. Gibson, to Stephen Gibson until after the death of her husband, Henry A. Gibson, and that said deed was executed by Henry A. Gibson on the eve of his marriage to the plaintiff, Hattie S. Brooks, and embraced all of the land to which Henry A. Gibson held title; that Stephen Gibson, on the 10th of January, 1882, declared in writing that it was agreed at the time of the execution. of the deed to him by Henry A. Gibson, that he, Stephen Gibson, was to hold 673¼ acres and 502 acres of the land embraced in said deed, and described in said declaration, for the purpose and use, and upon the condition, set forth in the answer of said Stephen Gibson; that this declaration of trust was recorded September 12th, 1885; that Stephen Gibson died April 20th, 1889, in possession of about 1,500 acres, more or less, of land, conveyed to him by Henry A. Gibson; that Stephen Gibson, by his will, dated January 16th, A. D. 1885, devised the land as aforesaid.

The plaintiff, Hattie S. Brooks, does not claim through Stephen Gibson, and is not bound by any declaration of trust made by him. The declaration by Stephen Gibson is a declaration in his own behalf. There is not sufficient evidence as to the execution and loss of the original trust agreement to admit of secondary evidence. The plaintiff, Hattie S. Brooks, does not claim as heir at law of her deceased husband, Henry A. Gibson. Her claim is for dower in the 1,500 acres, more or less, held by Stephen Gibson at the institution of her suit, upon the ground that the deed from her husband, Henry A. Gibson, to Stephen Gibson, executed upon the eve of her marriage, is void as to her claim of dower.

In *Ramsey* v. *Joyce*, McMull. Eq., and in *Manes* v. *Durant*, 2 Rich. Eq., the transfer of property by an intended wife on the eve of her marriage, was held to be a fraud upon the marital rights of the husband. I have been referred to no case in this State where the effect of such a transfer by the husband has been considered. As the right of dower does not depend upon the will of the husband, it seems to me that a transfer of all

his land by an intended husband, on the eve of marriage, and without the knowledge of the intended wife, and with intent to defeat the right of dower which would attach upon the marriage, is void as to the wife's dower. It seems to me that there can be no doubt that such would be the effect of such a conveyance, where the grantor and grantee both participated in the effort to defeat the right of the dower that would accrue to the intended wife upon the marriage. See cases cited in a note to *Thayer* v. *Thayer*, 89 Am. Dec., 218. See, also, Scribner on Dower, 561, and Perry on Trusts, § 213.

Was the deed from Henry A. Gibson to Stephen Gibson, dated November 21st, 1876, intended to defeat the right of dower which the plaintiff, Hattie S. Brooks, would have acquired by her intermarriage with Henry A. Gibson? At the time that the sheriff conveyed the title to Henry A. Gibson, he was a young man of very limited means, living with his father, Stephen Gibson. I have no doubt that it was agreed between Stephen Gibson and his son, Henry A. Gibson, that the latter should hold the title, to protect the land from the liability to pay the debts of Stephen Gibson. If such was the arrangement, it is not likely that either of them would have indicated their purpose to others. It is not necessary for the plaintiff, Hattie S. Brooks, to show that she had no knowledge of such an arrangement. It appears that Henry A. Gibson and Hattie S. Brooks lived within four miles of each other before their marriage; that they were engaged to be married eighteen months; that their anticipated marriage was the subject of rumor in the neighborhood for two or three months before their marriage. Stephen Gibson practically admits in his declaration of trust that he knew on the 21st of November, 1876, of the contemplated marriage, as he states in said declaration that provision was made on the 21st of November, 1876, for the widow and lawful issue of Henry A. Gibson.

If the deed of the 21st of November, 1876, was not intended to defeat the right of dower which Hattie S. Brooks would have acquired in the land upon the marriage, it is difficult to understand why Stephen and Henry A. Gibson should have kept the transaction secret, and that the deed was not recorded

37—37

until after the death of Henry A. Gibson.    If any trust for the
benefit of Hattie S. Brooks had been committed by Henry A.
Gibson to Stephen Gibson, it is strange that Hattie S. Brooks
should have been ignorant of it until the recording of the de-
claration of trust by Stephen Gibson, September 12th, 1885.

I feel constrained to find, as a matter of fact, that in the ex-
ecution of the deed of November 21st, 1876, Henry A. Gibson
and Stephen Gibson intended to defeat any right of dower
which the plaintiff, Hattie S. Brooks, might have acquired in
the land conveyed, as the wife of Henry A. Gibson.   I conclude,
as a matter of law, that said deed is void as to the plaintiff's,
Hattie S. Brooks, claim of dower in the 1,500 acres of land,
more or less, in the possession of Stephen Gibson on September
5th, 1888, and that the plaintiff, Hattie S. Brooks, is entitled
to one-third of the rental value of said lands, from the 6th of
September, 1882.   In this view of the case, it is not necessary
to consider whether the deed from Henry A. Gibson to Stephen
Gibson was voluntary.

In accounting for the rental value of the land, the estate of
Stephen Gibson will be entitled to credit for any lawful demands
due by the plaintiff, Hattie S. Brooks, to said estate, referred
to in the counter-claim in the answer of Stephen Gibson, and
no order will be made at this time as to said counter-claim, the
defendant, Hayne McMeekin, as executor, being at liberty to
offer further testimony as to said counter-claim in the account-
ing for rental value of the land, if he be so advised, as herein-
after directed.

It is ordered and adjudged, that a writ in dower do issue,
according to the usual practice of this court, to assign and lay
off to the plaintiff, Hattie S. Brooks, her dower in the 1,500
acres of land, more or less, referred to in the fourth paragraph
of her complaint, and of which Stephen Gibson was possessed
on the 5th of September, 1888.   It is further ordered and ad-
judged, that the defendant, Hayne McMeekin, as executor of
Stephen Gibson, do account to the plaintiff, Hattie S. Brooks,
before R. H. Jennings, who is hereby appointed special referee,
for one-third of the rental value of the 1,500 acres of land,
more or less, above referred to, from September 5th, 1882.

I do not think that Henry A. Gibson conveyed the 2,002 acres of land, November 21st, 1876, to Stephen Gibson, upon a secret trust, for the benefit of said Henry A. Gibson and his heirs, as contended by the plaintiff, S. Henry Gibson. So far as plaintiff, S. Henry Gibson, is concerned, Stephen Gibson is bound by the declaration of the trust, which he made in writing, January 10th, 1882, heretofore referred to. It seems to me, that the limitations as to the 673 acres of land in said declaration are too remote. I conclude, as a matter of law, that the limitations as to the 673 acres in said declaration of trust are too remote, and that S. Henry Gibson takes the fee in said 673 acres of land, subject to the payment of the debts of Henry A. Gibson, and, also, subject to the plaintiff's, Hattie S. Brooks, dower, as herein adjudged, as the 673 acres is a portion of the 1,500 acres held by Stephen Gibson, September 5th, 1888. The plaintiff, S. Henry Gibson, will be entitled to an accounting, by the executor of Stephen Gibson, of the rents and profits of so much of the 673 acres as remain after dower has been assigned to the plaintiff, Hattie S. Brooks, and the debts of Henry A. Gibson have been paid. The counter-claim against the plaintiff, S. Henry Gibson, has not been established, and cannot be allowed. All equities that may arise between the plaintiff, S. Henry Gibson, and the defendants, are reserved until the debts of Henry A. Gibson have been paid, and the dower assigned to the plaintiff, Hattie S. Brooks.

The defendants appealed, upon the exceptions stated in the opinion of this court.

*Mr. Charles A. Douglass,* for appellants, who, upon the question of the fraud on the dower rights of the wife, contended that the deed of Henry to Stephen vested the title to the property in Stephen before the marriage of plaintiff with Henry, and her dower claim cannot be sustained unless the court will take cognizance of the question of fraud upon plaintiff's alleged marital rights. But public policy demands that no such right be recognized at all, as the recognition of any such right or equity would render land titles precarious, and would, in a great measure, fetter alienation of estates. Property right and

enjoyment on the part of the wife are not legitimate considera-
tions moving to the marriage contract, and should not be given
legal sanction by the courts.   1 Glyn & J., 382; Park Dower,
236; Ath. Mar. Set., 323, 329; 6 N. Y., 482; 5 Johns. Ch., 589;
4 Cush., 138; 1 Scrib. Dower, 560.   As to the wife, the legal
question is an open one in this State.   McMull. Eq., 242; 2
Rich. Eq., 406.   But see *Peay* v. *Peay*, 2 Rich. Eq., 409.   If,
however, the doctrine invoked by counsel for respondents be
recognized by our courts, it must be made to appear that the
conveyance in question was voluntary, was done with the intent
to defraud the wife of her marital rights, and the conveyance
must embrace the bulk of her husband's property—none of
which facts are shown by the testimony in this case.   1 Scrib.
Dower, 560; 5 Johns. Ch., 482–489; 4 Mich., 230; 14 Vt., 107;
39 Am. Dec., 211; 1 Heisk., 346; 1 Dev. & B., 331; 2 S. W.
Rep., 158; 61 Mich., 315; 23 Grat., 122; 23 Pick., 80; 15 Atl.
Rep., 85.

*Mr. A. S. Douglass*, contra, on the same question, *cited* 2 Bish.
Mar. Wom., §§ 338, 350; 1 Scrib. Dower, 588; 39 Am. Dec.,
218; 1 Lead. Cas. Real Prop., 330; 1 Perry Trusts, § 213; 2
Rich. Eq., 405; McMull. Eq., 249; 6 N. J. Eq., 515; 5 Am. &
Eng. Enc. L., 912; 4 DeSaus., 366; 6 Wait Act. & Def., 813;
2 Bail., 324; Kerr Fraud, 197; 2 Mill Con. R., 60; Stew. Husb.
& Wife, §§ 265, 268; 3 Pom. Eq. Jur., § 1382–3; 1 Wash. Real
Prop., 203; 14 Am. & Eng. Enc. L., 479.

September 30, 1892.   The opinion of the court was delivered
by

MR. JUSTICE POPE.   The two actions, though begun sepa-
rately and at different times, were tried together on the Circuit,
and have been so heard in this court.   They came on for trial
before his honor, Judge Witherspoon, in the Court of Common
Pleas for Fairfield County, at the fall term, 1890, upon the
pleadings and the testimony as taken and reported by Henry N.
Obear, Esq.   The decree was filed by Judge Witherspoon on
the 31st December, 1890, and being in favor of the plaintiff in
each case, the defendants have appealed.   The questions raised

by the appeal in the first case, refer to both questions of law and fact by the Circuit Judge, and they will be first stated and considered.

1. That his honor erred in finding, as a matter of fact, that there was not sufficient evidence as to the execution and loss of the original trust deed to admit of secondary evidence of the same, said declaration of trust having been introduced in evidence by plaintiff, and without objection from any of the defendants, and the execution and loss of the original having been established by the undisputed testimony in the cases.

2. That his honor erred in finding, as a matter of fact, that Stephen Gibson was in possession of 1,500 acres of the land described in deed of Henry A. Gibson to Stephen Gibson, of date November 21st, 1876, at the time of the commencement of the suit, while it is beyond dispute in the testimony that 300 acres of said 1,500 acres were conveyed away by Stephen Gibson to defendants, W. F. Gibson and Martha Gibson, before the commencement of either of said actions, and for a valuable consideration.

3. That his honor erred in his finding of fact, that in the execution of the deed of November 21st, 1876, Henry A. Gibson and Stephen Gibson intended to defeat any right of dower which the plaintiff, Hattie S. Brooks, might have acquired in the land conveyed as the wife of Henry A. Gibson, whereas he should have found that said transfer was made in pursuance of negotiations which antedated the engagement of the plaintiff (Brooks) with Henry A. Gibson, and in pursuance, further, of an agreement existing between the said Stephen Gibson and Henry A. Gibson, without any reference to the alleged approaching marriage, and without any knowledge whatsoever on the part of said Stephen Gibson that the plaintiff (Brooks) and Henry A. Gibson were under contract to marry.

4. That his honor erred in his further finding of fact, that Stephen Gibson, in his memorandum of the original trust agreement, practically admitted knowledge of said alleged contemplated marriage, whereas it is respectfully submitted that no such inference should have been drawn from said declaration of trust.

5. For that his honor erred in finding, as a matter of law, that the deed of Henry A. Gibson to Stephen Gibson, of date November 21st, 1876, was fraudulent and void as to plaintiff's claim of dower.

6. For that his honor erred in declaring, that plaintiff Brooks is entitled to dower in 1,500 acres of land described in the complaint, whereas he should have held, that Henry A. Gibson, not being seized of any of these lands at any time during coverture, plaintiff could have no dower rights in any of the premises; and that even if dower rights could attach at all, could only attach to such lands owned by Stephen Gibson at the time of the commencement of the suit, and could in no manner affect the 300 acres conveyed by the said Stephen Gibson to defendants, W. P. Gibson and Martha Gibson, for value, and before the commencement of the action.

7. For that his honor erred in holding, that plaintiff Brooks was entitled to an accounting for one-third of the rents and profits since 16th September, 1882.

8. For that his honor erred in holding, that it was immaterial whether the deed of Henry A. Gibson to Stephen Gibson, of date November 21st, 1876, was voluntary or for a valuable consideration.

9. For that his honor should have held, that plaintiff Brooks had elected to take as beneficiary under the terms and provisions of said declaration, in lieu of any and all claim of dower, and had, during the whole period of her widowhood, enjoyed the benefits of said election, and that she could not at this late day claim dower rights, and bring her action to recover the same.

10. For that his honor should have held, that if said deed of November 21st, 1876, was intended to prevent plaintiff's claim of dower, then the provision made for her in said deed of trust was unequivocally intended to be in lieu and instead of any and all claim of dower, and that plaintiff could not be permitted to enjoy all the benefits of said provision, made in said declaration of trust, until the termination thereof by the terms of said trust, and then sustain an action for dower in said premises.

11. For that his honor erred in holding, that the counter-

claim of Stephen Gibson had not been established, whereas he should have held, that the testimony clearly established the fact, that the improvements on the trust property (basis of the counter-claim) had unquestionably been made, their money value proven, and, also, the necessity of such improvements to said trust property.

12. For that his honor erred in holding, that the limitations over to the children of Sarah McMeekin, as to the 673 acres, was too remote, and that the plaintiff, S. Henry Gibson, is the owner of the fee therein.

It should be here stated, that the respondents gave notice that they would, at the hearing of these appeals, urge that the decree of his honor, Judge Witherspoon, should be sustained, because: 1. That, marriage being a valuable consideration, the plaintiff, Hattie S. Brooks, by virtue of her marriage to Henry A. Gibson, is entitled to the position of a purchaser, for valuable consideration, and, having had no knowledge nor notice of the deed of conveyance by Henry A. Gibson to Stephen Gibson until after the death of Henry A. Gibson, the same is null and void, as against her right to dower in the land in question. 2. That Stephen Gibson, and those claiming under him, are estopped by his acts and conduct in representing and permitting Henry A. Gibson, as long as he lived, to represent the legal title to the land in question to be in said Henry A. Gibson, and by his concealment of said deed until after the death of said Henry A. Gibson, from setting up said deed, to defeat the right of the plaintiff, Hattie S. Brooks, to dower in said lands.

In 1866, Stephen Gibson was possessed of a large, and presumably valuable, plantation, lying on both sides of Little River, in Fairfield County, containing more than 2,000 acres. On the 11th December, 1866, he confessed a judgment to Fisher & Lowrance, merchants, for $8,153.17, with $16 costs, which, by operation of law, became a lien on all such plantation of lands. Under this execution, all the lands before named were sold by E. W. Oliver, then sheriff of Fairfield, on the 4th November, 1867, to Henry A. Gibson, at the price of something more than two thousand dollars, deed being made there-

for, and duly recorded in the office of the register of mesne
conveyances for Fairfield. A return was made on the execution
by said sheriff, that Stephen Gibson had not any other personal
or real estate within Fairfield District (now County), whereof
levy could be made. This judgment was assigned by plaintiffs
to Henry A. Gibson on 12th February, 1868. This fact was en-
tered on the sheriff's books, and, also, in the office of the clerk
of court for Fairfield. Stephen Gibson also confessed judg-
ment to Henry A. Gibson, on the 13th December, 1866, for
$2,560.07 debt and $16 costs, upon which judgment was duly
entered, and execution issued. Upon this execution a return
of *nulla bona* was made by E. W. Oliver, as sheriff, as aforesaid.
The foregoing facts were established by the records themselves.
Henry A. Gibson at once entered upon said lands as owner,
and conducted planting operations thereon until his death, on
the 9th November, 1879. Stephen Gibson, the father, lived
with his said son until the death of Henry in 1879. Henry A.
Gibson made returns for taxation of all these lands, and paid
the taxes thereon. After his death, Stephen Gibson returned
such lands for taxation as the property of Henry A. Gibson;
date of return, 28th June, 1880, such return being made under
oath to the auditor, and signed by Stephen Gibson, as agent.

In 1875, Henry A. Gibson began paying attentions, with a
view to marriage, to Hattie Mason, daughter of Washington N.
Mason, who lived at the time, and has lived all his life, within
four miles of the plantation of at first Stephen and afterwards
Henry A. Gibson. Mr. Mason knew of Henry A. Gibson
being the owner of said lands. After Henry A. Gibson was
engaged to be married, it was at first intended that the marriage
should be solemnized within the first fifteen days of November,
1876, but owing to the political excitement in the first few days
of November, 1876, it was postponed until 7th December, 1876,
at which time the marriage was consummated. The young
couple lived on the plantation, the young wife keeping the
house for a few months, when Stephen Gibson married, and
thereafter his wife kept the house, the young wife of Henry
giving such assistance in household management as she desired.
One child was borne by Mrs. Henry A. Gibson (the present

plaintiff in the second suit), to whom was given the name of
S. Henry Gibson.   After the death of Henry A. Gibson, his
widow and infant son resided with the family of Stephen Gib-
son, but the latter managed all the property.

In either 1880 or 1881, it was announced to the public that
on the 21st November, 1876, just sixteen days before his mar-
riage, Henry A. Gibson had made a deed, whereby he conveyed
his whole landed estate, absolutely, to his father, Stephen Gib-
son, on the following expressed consideration: "for and in
consideration of the good will and affection and services ren-
dered me by my father, Stephen Gibson, and of five dollars to
me paid by Stephen Gibson."   The existence of this deed was
alone known by Henry A. Gibson and Stephen Gibson; the
one witness, Hayne McMeekin, testifies that the matter had
been talked about between Stephen and Henry A. (his son) for
about eighteen months before 21st November, 1876.   On the
10th day of January, 1882, a deed was executed by Stephen
Gibson, whereby he declared that in pursuance of an agreement
in writing, made by him to his son, Henry A. Gibson, on the
21st November, 1876 (the same day on which the absolute deed
from Henry to Stephen was made), but which writing has since
been lost or mislaid, it was agreed that Stephen Gibson should
hold all the lands so conveyed to him by Henry A. Gibson, "on
condition, that after the payment of the lawful debts of the said
Henry A. Gibson, same should be held by me for the use and
benefit of the lawful issue of the said Henry A. Gibson; and
on failure of such lawful issue, or in case of the death of such
lawful issue without lawful issue," &c., that a tract containing
673¼ acres, described by meets and bounds, also a tract of 500
acres, of certain meets and bounds, should be held by Stephen
after the payment of lawful debts of Henry A. Gibson; and
his widow, should she survive him, should hold and possess the
same during her widowhood, and at her death, or marriage, to
go to the children of Sarah A. McMeekin.   This trust deed was
known to the widow Hattie in 1881.   It was placed on record
in 1882.

The widow Hattie is now Mrs. Hattie S. Brooks, having in-
termarried with one C. L. Brooks on 21st October, 1886.   This

38—37

action was commenced by Mrs. Brooks on 27th June, 1888, and the second action was commenced by S. Henry Gibson on the 13th August, 1888. The object of the first action is to obtain dower in all the lands, some 2,202 acres, more or less, that were owned and possessed by Henry A. Gibson during coverture, claiming that the deed from Henry A. Gibson to Stephen Gibson was never delivered during the lifetime of Henry, and if it was so executed, she had no knowledge of the same until after Henry's death, and having been executed to defeat her dower therein, was a fraud upon the rights of the plaintiff, as the affianced and intended wife of the said Henry A. Gibson, and, therefore, null and void as to her, of which fraud Stephen Gibson had full knowledge and participated therein; that she is certainly entitled to dower in the 1,500 still in the hands of Stephen Gibson, also rents and profits; that Stephen Gibson is insolvent, and should not be allowed to receive the rents and profits from said lands; that a receiver should be appointed. She prays for the usual orders under such allegations.

The child, S. Henry Gibson, by his guardian *ad litem*, alleges: That in case his mother takes dower in the lands of which his father died possessed, he, as the only heir at law of his father, Henry A. Gibson, will be entitled to the 1,500 acres of land in the possession of Stephen Gibson, under the alleged deed from Henry A. Gibson to said Stephen Gibson; that such deed being kept secret during the lifetime of plaintiff's father, and being without consideration, must be deemed to have been made by his father, upon a secret trust, for the benefit of the said Henry A. Gibson and his heirs. He prays that Stephen Gibson may account for all the rents and profits of the lands of Henry A. Gibson since his death, especially of that part that Stephen claims to hold for this plaintiff, and that the rights of the plaintiff in the 673¼ acres referred to may be ascertained and declared, and, also, that a receiver be appointed to hold the rents, &c.

To these complaints Stephen Gibson made answer, denying knowledge of the contemplated marriage of his son and plaintiff until after the deed of 21 November, 1876, had been executed; that such deed was made for a valuable consideration,

and to fulfil a pre-arranged agreement between himself and his son Henry. He denied all charges of fraud; he set up the trust deed, and claimed that both plaintiffs were due him large sums of money for maintenance and improvements placed upon the tracts of land in which they were, respectively, interested. These last he embodied in counter-claims. Plaintiffs replied, denying counter-claims. Stephen Gibson having died testate, Hayne McMeekin being his qualified executor, supplemental complaints were filed, to which such executor and his devisees were made parties.

It will be our duty to consider the 1st, 2d, 3d, 4th, and 11th grounds of appeal, relating, as they do, to the findings of fact by the Circuit Judge. The rule that is enforced by this court, when called upon to interfere with the findings of fact by a Circuit Judge, is, that unless such findings are without any testimony to support them, or are against the manifest weight of the testimony, we will not interfere. For the present, we will apply these rules to the 1st, 3d, 4th, and 11th allegations of such error. As to the first—the alleged loss or misplacement of the original agreement in writing, wherein was defined how Stephen should hold the lands so conveyed to him by Henry on 21st November, 1876. Now, the rule of law in such cases is, that you cannot give in testimony any substitution of a paper that is lost or mislaid without first explaining fully that you have exhausted every legitimate effort in your power to produce the original. Was there any such effort at explanation endeavored in this case? Who alone undertook to speak concerning, or who alone knew of the existence of, such paper, but Stephen Gibson himself? Although his lips are now closed in death, yet, while in life, he was fully and freely examined as a witness. In all that testimony, was there the slightest effort, stated by him, to discover the existence of that lost paper? Was any history given of its usual location? None. The rules of law, pertaining to evidence, are just as binding upon a judge sitting as chancellor, as when such judge is aided by a jury; these rules exclude such evidence, unless fully cleared up, as to the absence of the original. There was no error here.

*As to the third.*  It may be stated, that the workings of the human mind are peculiar.  When conviction is forced upon one, that the transactions of another, whose conduct is undergoing examination, are not clearly free from imputations of impropriety of intention, it is difficult to free the mind from suspicion of nearly every thing such party is connected with.  We need not blame human nature in thus suspending charity in our judgments of the conduct of our fellow-man.  The better way is to avoid a breach of the laws of nature, by resolutely refusing to have anything like a participation in secret agreements, to be kept for years from the world, concerning which the world has a right to be informed, especially keeping such transactions that work an advantage to you, and a disadvantage to nearly every one else, from the public eye.  It was established by defendants' own witness, that Stephen Gibson was provoked when his son informed him of his proposed marriage.  Another witness testifies, that Stephen Gibson said, "I told them, the lawyers, in my examination as a witness, that I did not *know*, on 21 November, 1876, that the marriage would take place, but I did not tell them I had never *heard* so."  It was known in the neighborhood.  During the last few months before the marriage, his son, Henry A. Gibson, was most diligent in his attentions to his intended bride, as far as frequent visits are concerned.  It was secretly done.  Inviolable secrecy was maintained as to its existence, and of any fact that would place the public, or, at least, those interested, on the inquiry.  In the deed of trust executed on 21st November, 1876, provision is made for widow and issue of Henry in nearly 1,200 acres of land.  Why a provision for widow and children to a man that Stephen Gibson considers in the last stages of consumption?  We cannot say that this finding of fact is without testimony to support it, or that it is opposed to the overwhelming weight of the testimony on this subject.  *Now, as to the fourth.*  We considered this ground in our examination of the third.  We may repeat, that we see no ground for interference here.

*Now, as to the eleventh.*  We see no error here.  The effect of testimony is to be weighed by the judge.  No accounts were

kept by Stephen Gibson. The families lived in common,i The property of Henry A. Gibson was used, and Stephen had none outside of what Henry A. Gibson provided. If the trust, declared in favor of Hattie Brooks, be repudiated by her, and her claim of dower is sustained, no counter-claim,i based upon buildings erected, are legitimate charges against her. If maintenance is charged for, she would be entitled to off-! set, as far as the same extended, by her services rendered. This charge for maintenance is an afterthought. We do not see,' however, if dower should be allowed by the decree of this court, hereafter, why, in accounting for rents and profits by the es-. tate of Stephen Gibson, any part of such rents and profits that were received by the said plaintiff, Hattie Brooks, should not be credited upon her full claim for such rents and profits.; But this question we do not now decide. We overrule this eleventh ground of appeal.

Lastly, we will consider the second ground of appeal, as to the finding of fact. For the present, we deem it our duty to say no more (in view of the fact, that we are to discuss the law points pertaining to this subject-matter fully hereinafter) than that we cannot sustain the judge as to this finding of fact. It will be remembered that the deeds pertaining to this transfer antedated the assertion in this action of plaintiff's claim of dower, by reason of alleged fatal vice in the deed from Henry A. Gibson to Stephen Gibson. No actual notice before the commencement was proved. When called to pass upon the effect of writings, this court always reserves to itself full power to question the accuracy of the judgment of the Circuit Judge as to the effect of such writings. We overrule this finding of fact, so far as the 300 acres therein em-i braced are concerned, but sustain all the other portions thereof.

Now, as to the law points suggested. Let us examine the 5th. Was the deed from Henry to Stephen Gibson, on the 21 November, 1876, void? This proposition involves sev-¬ eral others: 1. Was the deed in question made in anticipation of the intermarriage of Henry and Hattie, his wife, and with the intention to defeat the vesting in the said wife of an inchoate right of dower, participated in by both

Henry and Stephen? 2. Was all knowledge of such intention concealed from the said wife, so that she was in entire ignorance of such purpose? 3. Is marriage in this commonwealth, so far as the wife is concerned, a valuable consideration? 4. Does want of notice of a deed that is secret and unrecorded, when executed with a purpose to defeat the right of dower in lands of which the husband was seized, constitute an actual fraud upon the marital rights of the wife, and, if so, does such fraud vitiate such secret deed, so that in law the husband is still construed to be seized as of fee in such lands, notwithstanding the execution of such deed by the husband before the marriage was consummated?

It cannot be doubted that the facts embodied in the first two propositions have been answered by the findings of the Circuit Judge and against the appellants. This being the case, let us examine the third and fourth propositions. That a secret deed, executed by the wife in anticipation of marriage, would be avoided as against the husband, upon the ground that marriage with the husband is deemed a valuable consideration, and that such secret deed would be an actual fraud upon his marital rights, is now settled. *Ramsay* v. *Joyce*, McMull. Eq., 236; *Manes* v. *Durant*, 2 Rich. Eq., 406. In the latter case, Chancellor Harper, who delivered the opinion of the court, said: "In general, it is not questioned that a voluntary conveyance made by a woman in contemplation of marriage, without the knowledge of the intended husband, will be set aside as a fraud on his marital rights. It has been supposed that exceptions have been made in some particular cases, as when the object was to make provision for the children of a previous marriage. In the case of *Ramsay* v. *Joyce* (*supra*), I expressed my opinion, that there was no such exception. By assuming the burdens of the marriage relation, the husband is regarded as a purchaser for a valuable consideration of all the personal property in possession of his wife; and is there any doubt but that a voluntary conveyance, even to provide for children, is void against a subsequent purchaser for a valuable consideration and without notice?" Let it be remembered, in the instance of a husband, referred to in the case just quoted, that all right

to the ownership of the wife's personal property grew out of the well established principle of our laws (which existed until 1868), by which such personal property was vested in the husband. The husband, also, had the right to the use and control of any lands owned by his wife, and this right the law gave him, upon the well recognized legal principle, that all the laws pertaining to and controlling a contract, are considered as expressed in such contract when made, although not mentioned therein. Hence, when a man married a woman, it was said to be a part of that contract that he should be vested as owner with her personal property, and had the right to the use and control of her real estate, although no mention was made in the contract of marriage itself expressive of such rights.

Now, under the decision of our courts, marriage is decided to be a purchase for a valuable consideration of any rights conferred by the law upon the wife, although no expression of such results are mentioned when the contract of marriage is entered into by her. In *Rivers* v. *Thayer*, 7 Rich. Eq., 144, Chancellor Dargan announced the proposition in these words: "Marriage is a valuable consideration. Some have considered it the highest known in law. None would say it was a lower consideration than money. There is nothing unreasonable in this. The great value of the consideration consists in this: that the wife surrenders her person and her self-dominion to the husband, and enters into an indissoluble engagement with him, foregoing all other prospects in life; and if the consideration for which she stipulates fails, she cannot be restored to the *status in quo*. She can have no remedy or relief." In speaking of a wife's right to require the personal estate of her husband to be applied to the liens under the statutes of our State fixing the order of application of such personal estate by the deceased husband's personal representative, so as to let in her claim of dower, in the case of *Wilson* v. *McConnell*, 9 Rich. Eq., 513, the court used this language: "But this claim is met by a corresponding equity on the part of the widow, who is entitled to the position of a purchaser for valuable consideration against all but existing liens," liens that existed before marriage.

We are enabled, therefore, to declare it to be the law, as

derived from our own decisions, that in this commonwealth,
marriage is a valuable consideration to the wife, paid by her for
those rights and estates that by the laws of this commonwealth
are accorded the wife as a wife.    One of these is the right to a
comfortable maintenance by the husband; another is, that if
he dies intestate, she shall be entitled to the one-third of his
estate, if he leaves children; one-half, if he leaves none.    An-
other is the right to an estate of dower in all the lands of which
he may be seized during coverture, if she survives him.
Having thus brought the consideration of the subject down to
this point, the question is presented, what does the law say
shall be the result of a secret agreement between the husband
and a third person, on the eve of a marriage, whereby, to defeat
this right of dower in lands of which the husband is seized,
such intended husband conveys away his lands, still retaining
possession thereof, and withholding all knowledge from the in-
tended wife before marriage.

As we have already shown, such conduct of the wife in this
State would be upset as a fraud.    It must be confessed, however,
that there is no direct decision in favor of the assertion of a
corresponding right in the wife as against the husband.    An
*obiter dictum*, however, prejudicial to this claim of the
wife, occurred in *Peay* v. *Peay*, 2 Rich. Eq., 409, where
Chancellor Dunkin said: "It has been said that a deed
executed by the husband on the eve of his marriage, for this
purpose, would be deemed fraudulent.    But the propriety of
this *dictum* may be well questioned.    It is not like a deed pri-
vately executed by the wife under such circumstances.    The
husband becomes responsible for all the existing as well as the
future debts of his wife, and may be disposed to contract with
some reference to the estate he is to receive."    When *Peay* v.
*Peay, supra,* is examined, it will be seen that this expression of
Chancellor Dunkin has no pertinency to the issues therein in-
volved, and furnishes another illustration of the danger in a
judge suffering himself to let fall observations *dehors* the record.
In that case Austin Peay and his wife were married in *1818.*
In *1840*, with $20,000 of his money, he purchased a fine planta-
tion in Richland County from Thomas Taylor, and had Taylor

to convey the same by deed to a trustee. The question after his death was presented by his widow, that she had an estate of dower in such lands. Thus it will be seen that this judicial expression of Chancellor Dunkin is purely an *obiter dictum.* Of course, proceeding from such an eminent authority, it is entitled to consideration, but it cannot be invoked here as a precedent. It appears, as before remarked, that the wife's deed is set aside because it operates as a fraud on the husband's marital rights. What rights? Surely only such as he was clothed with by the law of the land in view of his responsibilities assumed when he entered into that obligation. We have seen that the law clothes the wife with rights, and, amongst others, her estate of dower. Does not the law place heavy responsibilities upon her towards the husband? Aye, and fearfully heavy they are, too, when death alone affords her succor in some instances.

In the remarks quoted from Chancellor Dunkin, in *Peay* v. *Peay, supra,* it will be seen that he lays stress upon the fact of the assumption of serious responsibilities by the husband for the wife, assumed by him upon marriage, such as paying her debts already existing or to exist, and this is advanced as the basis for the husband's rights in his wife's estate. But, on the other hand, does not the wife have a right to look carefully to see if he who would wed her has the means essential to support herself and such offspring as a kind Providence may give her? In England, is it not a matter of every day occurrence that the husband makes settlements upon the intended wife often at the instance of his intended wife's family or friends? Then, too, in our own country, is it not often considered in the family circle whether a marriage is advisable, because of the ability of the proposed husband to care for his wife? If a man cannot be charged with indelicacy in looking into his wife's estate, surely the woman, who at best is so unprotected, may consider, when she is asked to marry a man, whether he has the means to provide for her.

Here was a man of confessedly weak health—is it to be a matter of censure that the woman he asked to be his wife and the mother of his children, considered that he was the owner

39—37

of a large plantation well stocked? This wife says she knew that her husband was the owner of this large landed property, and that any change in this ownership was studiously withheld from her—so much so, that she was not aware until a year or so after her husband's death, that there was any claim that he was not the owner of these lands. Was she not deceived? Did not both Henry and Stephen Gibson secretly confederate together to destroy an estate that they both knew the law would give her at her marriage? Was this not a fraud? Marriage to a woman is a valuable consideration for the purchase of the privileges of wifehood, with all the rights affixed to that relation by the law of the land, and any secret combination to defeat the vesting of those rights, between the husband, the vendor, and his vendee, is an actual fraud. By the law of the land, when it is discovered and established, such deed is null and void, revesting the title, so that it may be said that Henry A. Gibson died seized and possessed of his landed estate that was attempted to be conveyed by him to Stephen Gibson, so far as such lands still remain in the control of the said Stephen Gibson. We have not reproduced much of the learning in which both sides to this contest indulged at the hearing before us. Much of it referred to the action of the courts of other States than our own. In our best judgment, the solution of these interesting points of law was easily supplied by our own decisions.

As to the sixth ground of appeal. We are inclined to think that the appellants are entitled to a modification of so much of the Circuit decree as requires that the plaintiff is entitled to have her dower allotted from the 300 acres of land conveyed by Stephen Gibson to W. P. Gibson and Martha Gibson. It was known to the plaintiff in 1881, at least, that her husband had conveyed the whole tract of land to Stephen Gibson, yet she waited until 1888 to bring her action to set that deed aside. The "Case" here sets forth that it was in this way (through her suit) that these defendants, W. P. Gibson and Martha Gibson, learned of the secret vice in the deed of their grantor. Years before her suit was brought, these defendants, W. P. Gibson and Martha Gibson, had paid value

for these lands. It seems to us, therefore, that they have a right to invoke the doctrine of innocent purchaser for valuable consideration without notice for their protection. Such being our conclusion, we sustain so much of this ground of appeal as sets up this specific error, and overrule all the balance thereof.

As to the seventh ground of appeal. We see no error here. If the plaintiff is entitled to dower (and we have sustained her claim therefor), it follows, that she is entitled to rents and profits, but the statute of limitations being invoked by the defendants, such accounting for said rents and profits cannot reach back of the six years immediately preceding her suit.

As to the eighth ground of appeal. It having been determined, that both Henry A. and Stephen Gibson conspired together to practice this wrong upon the plaintiff, it made no difference, if full value was paid by Stephen or whether the deed was purely voluntary. The principle of law is set up in *Lowry* v. *Pinson,* 2 Bail., 324. Other of our cases adhere to this rule. We overrule this ground of appeal.

As to the ninth ground of appeal. Appellants insist, that the plaintiff, "having eaten of their bread," should be estopped all inquiry as to its source. It would be a very harsh doctrine of law, to hold a woman, who, with her little infant, stayed with her dead husband's father's family on broad acres, that she believed were her own and child's for some years, but afterwards heard, only "after all her husband's debts were paid," that a portion (500 acres) was to be for her, to enjoy the rents and profits for life or widowhood, should by eating bread in that household, and being clad not extravagantly, lose her estate of dower in all those lands. Such a doctrine of the law is not applied to a man with all his strength. Shall it be declared to apply to a widowed woman? One of our decisions will place the seal of condemnation upon such doctrine. In *Manes* v. *Durant,* 2 Rich. Eq., 406, *supra,* one of the points raised, whereby it was thought the husband Manes had forfeited his right to upset the deed of his wife, made before their marriage, without his knowledge, for fraud upon his marital rights, was this: that, after Manes had discovered

the deed was made, he was induced to execute his note for $100, the hire of one of the negroes covered by his wife's ante-nuptial deed.   But the court said, no.   "To operate as a con-firmation, I think the act must be intended to confirm  *  *
The maxim that every one must be presumed to know the law, seems not to apply, when the party has been practiced upon by fraud."   "The rule, I think, may be very well taken as laid down by Lord Redesdale in *Murray* v. *Palmer*, 2 Sch. & Lef., 486, that the party must at least be aware, that the act he is doing is to have the effect of confirming an impeachable trans-action."   There is no evidence that anything active was done by the plaintiff; it was purely passive, and, under the forego-ing principles, we must overrule this ground of appeal.

As to the tenth ground of appeal.   Our decision on the pre-ceding points, especially that in the last considered, seems to us to dispose of the question here presented.   It is, therefore, overruled.

Lastly, we come to consider the ground of appeal relating to the action of S. Henry Gibson, the infant, by his guardian *ad litem.*   It seems to us, that having already decided that this deed was vitiated by the fraud participated in by both grantor and grantee, little need be said here; for, if the deed of Henry A. conveyed no estate to his father Stephen, there was nothing in Stephen, as an estate, whereon to predicate any deed of trust on any part of said lands.   We must, therefore, overrule this ground of appeal.

It is the judgment of this court, that the judgment of the Circuit Court be modified, so as to exclude the 300 acres of land in the possession of W. P. Gibson and Martha Gibson from any claims of dower therein of the plaintiff Brooks, and that in all other respects such decree be affirmed.