# MORAN, Appellant, v. STEWART.

### Division One, March 18, 1903.

1. **Dower:** BARRED BY ANTENUPTIAL CONTRACT: RENUNCIATION. An antenuptial contract between a man and woman of legal age, agreeing that the woman will receive a certain estate, to take effect after the death of her intended husband, by way of jointure, in full discharge of all the claim of dower, is not, under the statute, if otherwise legal, subject to renunciation after his death. The statute gives the right of renunciation, if the contract be antenuptial, only in case the wife was an infant at the date of the contract.

2. ———: ———: PROVISION FOR WIDOWHOOD. The jointure mentioned in the contract which the widow is to take on the death of her husband in lieu of dower, both by the common law and our statute, must be "a provision for her support during life", and if it is limited to her widowhood or any other period short of her life, the contract is ineffective to bar her dower.

3. ———: ———: WITHOUT CONSIDERATION: ACCEPTANCE. The consideration on the woman's part for an antenuptial contract between a man who had 606 acres of land and two children, and his intended wife, who is conceded to be *sui juris* and had a legal right to make any contract she saw fit, was that she would "retain as her absolute property free from any claim or right of her said husband, all the property, real and personal, which she now has or may hereafter acquire by inheritance or otherwise," etc. At that time she owned no other property except her personal apparel and had nothing in expectancy, being a woman thirty years old who worked in a millinery store. *Held*, that the contract by which she surrendered her claim to quarantine and homestead and dower, for the use during life or widowhood of 106 acres, constituting the mansion house and messuages, was without any valuable consideration, and insufficient to bar her dower. *Held*, also, that by remaining in the mansion house after her husband's death until her dower is assigned, she did not accept the provisions of the contract.

Appeal from Andrew Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

Moran v. Stewart.

*Jas. F. Pitt* for appellant.

The question is, Will an estate, limited to widowhood, and settled by contract before marriage, if unaccepted, bar dower, leaving out of view for the present the questionable character of such a contract between a man and a woman aged respectively seventy and thirty years? The case is freed of all equitable considerations. The widow's occupancy must be referred to her right of quarantine and homestead, and defendant himself pleaded and proved that she had in fact disavowed the marriage contract by filing an election within twelve months after her husband's death. So there is no question of entering or of an acceptance, or of acts or facts which would raise an equitable jointure; and besides, the declaration of law upon the court's own motion shows that the case was disposed of upon the theory that this antenuptial contract by its terms created a strict legal bar. Secs. 2950, 2951 and 2952, R. S. 1899. In one brief sentence Kent has summed up and stated the whole law upon this subject: "But the conveyance before marriage of an estate to the wife, to continue during widowhood, by way of jointure, or if made to depend on any other condition, will not bar her dower, even if she be an adult, unless, when a widow, she enters and accepts the qualified freehold." 4 Kent (6 Ed.), 56; Grogan v. Garrison, 27 Ohio St. 50; 2 Scribner on Dower (2 Ed.), 397; McCartee v. Teller, 2 Paige 511; s. c., 8 Wend. 268; Mowser v. Mowser, 87 Mo. 437.

*J. W. Boyd, Booher & Williams* and *P. Mercer* for respondent.

Defendant claims that the plaintiff is not entitled to dower for that before marriage to David Moran, deceased, from whom defendant obtained the lands, she entered into an agreement with him by which it was

expressly agreed, in consideration of the lands given her by said contract for and during her natural life or widowhood, that she thereby relinquished all claim of dower in the other lands belonging to said David Moran. The contract fails to comply with the statutory provision in one particular, and that is, it does not make any provision for the plaintiff for and during her lifetime, but only during her widowhood. Defendant contends that while this antenuptial contract does not fully comply with the provisions of the statute, yet as it was a contract made between adults before marriage, it constitutes an equitable jointure, and, therefore, a defense to this suit. Logan v. Phillips, 18 Mo. 22; Halferty v. Scearce, 135 Mo. 428; 10 Am. and Eng. Ency. of Law (2 Ed.), p. 209; Bryan v. Bryan, 62 Ark. 79; McGee v. McGee, 91 Ill. 548; Jordon v. Clarke, 81 Ill. 465; Jacobs v. Jacobs, 42 Iowa 600. The contract is fair and reasonable. We know of no reason why it should not be enforced. In Freeland v. Freeland, 128 Mass. 509, it is held that an antenuptial contract which provided that both shall retain their respective estates, with such as may hereafter accrue to them separately and apart from the other, subject to the payment of their respective debts, with power to each to manage and dispose of their estate as they shall see fit, and at death to descend to their respective heirs, is a good contract, although the sum of $1,500 provided in said contract to be paid to the wife as a debt against her husband's estate, was never paid. Andrews v. Andrews, 8 Conn. 79. With respect to the legal requisite, that the estate limited in jointure be such an estate of freehold as should continue during the wife's life, no such circumstance will be necessary in equity in order to make the jointure an absolute bar to dower, if the intended wife be of age and a party to the deed; because, as she is able to settle and dispose of all her

Vol 173 mo—14

rights, she is competent to extinguish her title to dower upon any terms to which she may think proper to agree. If, therefore, she accept of a term for years, or an annuity, or copyhold lands, in lieu of her dower, she will be concluded and barred of her common-law right. Rose v. Reynolds, 1 Swan 446; Charles v. Andrews, 9 Mod. 152; Vizard v. Longdale, Kelynge's Ch. Cas., 17, *sub nomine* Vizod v. London; cited 2 Eden 66; 13 Eng. Law and Eq., 408, note; Garrard v. Garrad, 7 Bush 436; Lacy v. Anderson, 1 Swan 445; Gladstone v. Ripley, cited to Eden 39; see Grogan v. Garrison, 27 Ohio St. 50; Farrow v. Farrow, 1 Del. Ch. 457.

MARSHALL, J.—This is a suit for dower by the plaintiff, the widow of David Moran, who died March 13, 1892, testate, seized of an estate of inheritance in the land, to-wit, the southeast quarter of section 29; the southwest quarter of section 28; the west half of the southeast quarter of section 28; the southwest quarter of the northwest quarter, and the southwest quarter of the northeast quarter, and the north half of the southeast quarter of the northeast quarter of section 28, township 60, range 34, containing five hundred acres, more or less. Four thousand dollars damages for detention of dower are also claimed. The defendant is a son of the deceased, adopted by deed dated April 17, 1869, which was long prior to his marriage to the plaintiff.

The defense is that in addition to the lands described in the petition, David Moran owned certain other lands described, amounting to one hundred and six acres; that on February 5, 1891, plaintiff being thirty years old, and David Moran being seventy years old, and they two contemplating marriage, entered into the following antenuptial contract:

"MARRIAGE CONTRACT.

"Article of agreement by and between David Moran, party of the first part, and Angie Fox, party of the second part, this 5th day of February, 1891. Witnesseth, that whereas, said parties contemplate, entering into the marriage relation with each other. And whereas, each of said parties own property in their own right.

"Now, therefore, in consideration of the said contemplated marriage, it is mutually agreed that the said party of the second part is to retain as her absolute property free from any claim or right of her said husband, all the property, real and personal, which she now has or may hereafter acquire by inheritance or otherwise; that her said property shall not in anyway become liable for her support while she shall remain the wife of the said party of the first part; that she shall have the right to sell, assign, transfer, convey or dispose of by will or otherwise any or all of her said property as she may deem best. It is further mutually agreed, in consideration of said marriage that the second party waives and relinquishes all her marital rights under the laws of this State, and waives, releases, and quitclaims all her right of dower and homestead in all the property both real and personal which the party of the first part now owns or may hereafter acquire or own, and all claims for support, maintenance or dower and homestead which she would have against the estate of the said David Moran after his death in the event of her surviving him as his widow. It is further mutually agreed in consideration of said marriage and of the premises aforesaid, that said second party shall have the control, use, rents and profits and possession of the real estate hereinafter described, after the death of the said David Moran (if she survive him) during her life or as long as she shall

remain his widow, to-wit:" [Here follows a description of the 106 acres of land before referred to].

"It is mutually agreed that said second party shall accept said interest in said real estate as full satisfaction of and in lieu of all claim for dower and homestead in any or all of the real estate of which said David Moran is now seized in law or equity, or may at any time become seized during coverture, he may have at death. That said David Moran shall have absolute control of all his property of every kind and description, except said 106-acre tract aforesaid, free from any claim of his said wife, and sell, assign, transfer, convey and dispose of the same without her joining in any deed therefor. That he shall sell and convey the same by his separate deed or dispose of the same by will or otherwise as he may deem best. That it shall not be necessary for said second party to join in any deed, contract, or conveyance he may make to any real estate except the tract herein described. That said Angie shall pay the taxes and insurance on said real estate herein described after the death of the said David Moran (if she shall survive him) as long as she shall remain the widow of said David Moran and use said real estate under this contract, and her right to the use of said real estate shall terminate with her death or widowhood.

"Given under our hands and seals this 5th day of February, 1891."

Which said contract was duly acknowledged.

The defendant further pleads that the plaintiff accepted the provisions of the antenuptial contract and after the death of her husband she entered upon the possession of the land therein described and has ever since occupied, used and enjoyed it, and hence she is concluded and estopped from claiming dower in the land described in the petition.

The defendant further pleads that the plaintiff has received three thousand dollars, being one-third of

the personal estate, and that the rents, issues and profits of the one hundred and six acres are reasonably worth five hundred dollars a year.

The defendant further pleads that within one year after the death of her husband she elected to take one-half of the real estate subject to the payment of the debts of the deceased in lieu of dower.

The reply admits that the plaintiff is in possession of the one hundred and six acres of land, but alleges that it constituted the mansion house and messuages appurtenant thereto, of her husband, and that she has continued to remain therein by virtue of her quarantine and homestead rights.

On the trial the defendant, over the plaintiff's objection, read in evidence the marriage contract and the widow's election; proved that the 106 acres of land was worth $100 an acre, and that the rental value was $400 a year, and that the plaintiff has been in the possession thereof since the death of her husband. The plaintiff read the deed of adoption of the defendant by the deceased, and then introduced parol evidence showing that she was thirty and he seventy years old when they were married, and that prior to said marriage she worked in a millinery store in St. Joseph and had no property other than her personal wearing apparel. The case appears to have been tried by the court without a jury, and at the request of the plaintiff the court declared the law to be that the election pleaded did not bar the dower claimed, but refused to declare that the marriage contract did not bar dower, and of its own motion declared the law to be that such contract barred dower, and entered judgment for the defendant. The plaintiff appeals.

## I.

The sole question presented by this record for adjudication is whether the marriage contract barred dower.

The contract was made before the marriage between the plaintiff, who was then thirty years old, and David Moran, who was then seventy years old.

This being true the jointure intended to be provided was not subject to renunciation under the statute (R. S. 1899, secs. 2950, 2951), for the statute only gives the right of renunciation, if the contract be antenuptial, in case the wife was an infant at the date thereof, which was not true here. The statute, therefore, is inapplicable to this case.

It is contended, however, that the plaintiff and the deceased being both *sui juris* when the contract was made, it is a good contract, and creates an equitable jointure.

On the other hand, the plaintiff contends that the contract is void for two reasons: first, because instead of making provision for the wife for life, it limits the provision to her widowhood; and, second, because it is wholly without any consideration to the wife to support it.

The defendant replies that although the provision is limited to widowhood, still, that it is only a condition subsequent, and as it is void because in restraint of marriage, it leaves the provision one for the life of the wife.

Jointure is defined by Sir Edward Coke to be, "a competent livelihood of freehold for the wife, of lands or tenements, etc., to take effect presently in possession or profit after the decease of her husband for the life of the wife at least." [Coke on Litt., L. 1, ch. 5, sec. 41, 36b.]

To make a perfect jointure the following elements are necessary: "First, it must take effect for her life presently after the decease of her husband; second, it must be for the term of her life or a greater estate; third, it must be made to herself and to no other for her; fourth, it must be made and so particularly expressed in the deed to be in satisfaction of her

whole dower and not of part of it only." [Coke on Litt., supra; 10 Am. and Eng. Ency. of Law (2 Ed.), p. 207; Saunders v. Saunders, 144 Mo. l. c. 488.] When all of these requisites are not present, and it is still evident the husband did not intend the wife to have the provision made by him for her and dower also, she will be compelled, in equity, to elect between them, and this is known as equitable jointure. [10 Am. and Eng. Ency. of Law (2 Ed.), p. 208.]

Equitable jointure exists notwithstanding the provisions of our statute. [Logan v. Phillips, 18 Mo. 22; Johnson v. Johnson, 23 Mo. 568; Farris v. Coleman, 103 Mo. l. c. 361.] Our statute, as well as the common law, contemplates that the jointure shall be "a provision for her support during life." And the same is true as to equitable jointure.

The jointure in this case was limited to life or widowhood. The limitation to widowhood made the contract ineffective to bar dower, for the provision must be for her life, without limitation or qualification.

In Mowser v. Mowser, 87 Mo. l. c. 440, this court said: "The widow must receive under it, real or personal property as a provision for her support during life; it is against public policy to allow a man, by an agreement before marriage, which does not secure to the wife a provision for her support during life after his death, to bar her right to dower. The statutes sanction no such agreement." This case was cited and followed in Farris v. Coleman, 103 Mo. l. c. 361.

This limitation of the provision to widowhood, is in no sense a condition subsequent. A condition subsequent operates upon an estate already created and vested, and renders it liable to be defeated. [Martindale on Conveyancing (2 Ed.), sec. 124.] Here no estate vested at once in the wife. Jointure takes effect only upon the death of the husband. The law makes provision for the wife for life. The husband

can not curtail the bounty of the law by making a provision for her for a lesser period than her life, that shall have the effect of superseding the provisions of the law.

## II.

But it is contended that this is a contract between two persons who were *sui juris* when it was made, and hence it is binding.

"It has been frequently decided that an antenuptial agreement to which the intended wife, who is an adult, is a party, or to which she consents, whereby it is provided that for a sufficient consideration she will give up her right of dower, constitutes a good bar to dower." [10 Am. and Eng. Ency. of Law (2 Ed.), p. 209, and cases cited in note.]

But it has also been aptly said by MILLER, J., in Pierce v. Pierce, 71 N. Y. 154, and quoted in 10 Am. and Eng. Ency. of Law (2 Ed.), p. 210: "The surrender and release of rights to be acquired by the intended wife by the marriage relation must, however, be regarded with the most rigid scrutiny. . . . The relationship of parties who are about to enter into the married state, is one of mutual confidence, and far different from that of those who are dealing with each other at arm's length. This is especially the case on the part of the woman," etc.

In Logan v. Phillips, 18 Mo. l. c. 28, SCOTT, J., said: "When a contract was made by a woman of full age before marriage, by which, for a sufficient consideration, she relinquished her right of dower in her future husband's real estate, it was sustained by courts of equity. Being *sui juris,* and free from the control of any one, it was not perceived why her contracts should not be binding as well as those of all other adults."

Scrutinizing the contract in this case, then, we start with the proposition that the plaintiff was *sui juris* and had a legal right to make any contract she saw fit, but as a corollary to this proposition, the contract must have a valuable consideration to support it, and the husband must not have overreached his wife in procuring it.

The intended husband owned about six hundred and six acres of land. The intended wife owned nothing—worked for her living in a millinery store. Under the law she would be entitled, at his death, to quarantine, homestead and dower, or in lieu of dower to a child's share, which in this case would be one-third—the two adopted sons being entitled to the other two-thirds. [R. S. 1899, sec. 5246; Moran v. Stewart, 122 Mo. 295; Moran v. Stewart, 132 Mo. 73, where other features of this controversy were formerly before this court.]

The marriage contract gave her in lieu of all these rights, the control, use, rents, profits and possession of the 106 acres of land (being the homestead and the plantation appurtenant thereto) for life or during widowhood. And the only consideration to her for entering into such a contract was that she should "retain as her absolute property free from any claim or right of her said husband, all the property, real and personal, which she now has or may hereafter acquire by inheritance or otherwise; that her said property shall not in any way become liable for her support while she shall remain the wife of said party of the first part; that she shall have the right to sell, assign, transfer, convey or dispose of by will or otherwise any or all of her said property as she may deem best."

In other words, he gave up his possible marital right to the possession of any real property she might thereafter acquire, for she had nothing at that time that was thus secured to her against his claims, and she gave up her right to quarantine until dower was

assigned her, her homestead rights, and her dower right, or in lieu of it a child's share in the whole six hundred and six acres of land, and instead of all this was to receive under the contract the right to occupy and enjoy the one hundred and six acres during life or widowhood.

It is too clear to admit of discussion that there was no valuable consideration moving to her to support this agreement, and that it was insufficient for this reason also to bar her dower. It is also clear that by continuing in the mansion house until her dower is assigned, she did not accept the provision made for her by the contract.

For these reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.