# Nelson v. Brown, and Brown *v.* Nelson.

*Bill to Annul Deed, and Assign Dower and Homestead.*

(Decided Jan. 12, 1910.—51 South. 360.)

1. *Dower; Conveyance Before Marriage; Fraud as to Wife.*— Where a man, in contemplation of marriage, without the knowledge of his intended wife, and with the intention to prevent her right of dower and homestead from attaching to land, conveys the land before the marriage, such a conveyance is a fraud on the rights of the wife against which equity will give relief.

2 *Same; Consideration.*—The statute of registration for conveyances is intended for the protection of purchasers for a valuable consideration, mortgagees and judgment creditors without notice, and cannot be construed to include persons entering into a marriage contract, notwithstanding marriage is a valuable consideration, since, in a way, it must be differentiated from that valuable consideration which will support a contract in that the word, valuable, as so used signifies pecuniary considerations or considerations convertible into money; hence, a deed made prior to an agreement to marry and without reference to any anticipated rights of the prospective wife, is not rendered invalid as in fraud of the wife's marital rights by a failure to record it until after the marriage.

3. *Marriage; Contract.*—In law marriage is a civil contract between the parties.

4. *Deeds; Conveyance in Fraud of Wife; Evidence.*—The evidence in this case stated and examined and held to show that the deed attached was executed on the day of its purported date prior to the agreement to marry, and without reference to any anticipated marital rights of the prospective wife.

5. *Same; Presumptions; Burden of Proof.*—While the presumption of law that a deed which contains on its face no indications of falsity was executed on the day it purports to bear date may be controverted by evidence aliunde, the mere suggestion of fraud or falsity does not put on the parties producing it the burden of showing that the deed was actually executed on the day of its purported date.

6. *Same; Fraud; Evidence.*—Where it was disclosed that the parties to a deed occupied to each other the ordinary relations of grantor and grantee and the evidence tended to show that the grantor understood the nature and effect generally of the deed and that if the grantor did not understand, the failure to understand was attributable to lack of due diligence as a free agent, the court is not authorized to find that the deed was procured by actual fraudulent representation of the grantee.

7. *Same.*—Where confidential relations exist between the parties the law presumes the exercise of undue influence in voluntary con-

veyances, and places on the grantee, when shown to be the dominant party, the burden of repelling the presumption by competent evidence.

8. *Same.*—While the relation of stepson and stepmother is not one from which the law presumes a confidential relation, yet, the existence of trust and confidence may be shown, and when that is done and the stepmother makes a voluntary conveyance to the stepson, and he is the dominant party in the relation, the burden is upon him to show the independent action of the stepmother at the time of the transaction.

9. *Same.*—One seeking to set aside a voluntary conveyance on the ground of constructive fraud, effected by the confidential relation existing between the parties has the burden of showing the existence of the confidential relations.

10. *Same.*—The evidence in this case stated and examined, and held to show the existence of such a confidential relation between the grantee and the grantor at the time of the execution of the voluntary conveyance as to place upon the grantee the burden of showing that the grantor had the benefit of independent advice.

APPEAL from Tuscaloosa Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Mary E. Nelson against Joe D. Brown to annul a deed and to have dower and homestead alloted to her. From a decree for complainant granting insufficient relief she appeals. Respondent also files a cross appeal. Affirmed on both appeals.

HENRY FITTS, for appellant and cross appellee.—A conveyance of a prospective husband of a material portion of his property pending the treaty of marriage is void against the intended wife.—*Kelly v. McGrath*, 70 Ala. 75; *Arnegaard* 41 L. R. A. 258; *Rice v. Waddell*, 67 S. W. 605; *Hach v. Rollins*, 158 Mo. 182; *Brooks v. McMeakin*, 15 S. E. 1019; *Petty v. Petty*, 39 Am. Dec. 501; *Jones v. Jones*, 38 N. W. 88; 14 A. & E. Ency. of Law, 252; 17 Cent. Dig. Sec. 18; 26 Ib. Sec. 18; 14 Cyc. 944. The conveyance prior to the marriage was voluntary.—*Schall v. Weil*, 103 Ala. 411; 20 Cyc. 759; and Alabama cases there cited. Marriage is a civil contract and affords a valuable consideration.—*Bookout v.*

[Nelson v. Brown, and Brown v. Nelson.]

*Bookout,* 49 N. E. 824; *Derry v. Derry,* 74 Ind. 560; *Brooks v. McMeakin, supra.* The failure to record was a badge of fraud.—*Seals v. Robinson,* 75 Ala. 373. From these authorities it follows that ₁the chancery erred in failing to decree a cancelation of the deed made before marriage. As to the cross appeal the facts sufficiently show such a confidential relationship as to authorize a decree of the chancellor favorable to the original complainant.—*Noble v. Moses,* 81 Ala. 540; *Kyle v. Perdue,* 95 Ala. 585; *Harroway v. Harroway,* 136 Ala. 505; *Burk v. Taylor,* 94 Ala. 534; *Shipman v. Furniss,* 69 Ala. 563.

ORMOND SOMERVILLE, for appellee, and cross appellant.—On the cross appeal complainant insists that the evidence clearly showed that the complainant executed the deed with full knowledge of the contents and effect, and was not misled in any way; that no relation of confidence existed and that no confidence was reposed, and it therefore rested on the grantor to clearly exhibit and prove these special curcumstances before the respond-ent was called upon to vindicate the transaction from the charges of unfairness.—*Judge v. Wiggins,* 19 Ala. 765; *Boney v. Hollinsworth,* 23 Ala. 690; *Malone v. Kelly,* 54 Ala. 532; *Waddell v. Lanier,* 62 Ala. 347; *Adair v. Craig,* 135 Ala. 332. The chancellor erred in decreeing homestead out of all the lands owned by the decedent husband.—Sec. 4197, Code 1907; *McGaugh v. Davis,* 150 Ala. 559. The chancellor did not err in declining to decree the deed made by the husband prior to the marriage void as against the wife. The strong presumption is that the deed speaks the truth as to the date of its execution.—*Aldridge v. Banks,* 17 Ala. 47; 8 A. & E. Ency. of Law, 730; 16 Am. Dec. 85. The burden of showing the falsity of the date is upon the per-

son impeaching its verity.—*Hauerwas v. Goodloe,* 101 Ala. 162. The failure to record the deed before marriage could not affect its validity.—*Richardson v. Scholfield,* 35 Me. 382; *Blood v. Blood,* 40 Mass. 80. And by necessary implication.—*Champlin v. Champlin,* 16 R. I. 314; *Perry v. Graham,* 18 Ala. 822; *Gibson v. Carson,* 3 Ala. 421; *Wood v. Lake,* 62 Ala. 294. Counsel discuss other matters not necessary to be here set out.

SAYRE, J.—Appellant, now married a second time, and Squire D. Brown, now deceased, intermarried on February 23, 1894. Appellee is the son of deceased by a former marriage. Prior to his second marriage Squire D., by a deed bearing date December 1, 1892, on a recited consideration of $6,000, conveyed to appellee substantially all of his property, consisting of about 2,000 acres of land in the county of Tuscaloosa. Squire D. died in March, 1905. In June, 1906, appellant, on the recited consideration of $100 and love and affection, executed to Joe D. a quitclaim of all her interest in the lands of her deceased husband, including some pieces which had been omitted from the conveyance by her husband or had been since acquired. The bill was filed in March, 1908, and prayed that the deed from Squire D. be vacated and annulled and held for naught as in fraud of her marital rights; that dower be assigned and homestead set apart; that the quitclaim be set aside as procured by undue influence, and for an accounting of the personal estate of the complainant's deceased husband. The chancellor wrote a decree sustaining the deed by the deceased husband, but annulling the later quitclaim, and granting other relief. From that decree by appeal and cross-appeal the cause is brought here for review.

[Nelson v. Brown, and Brown v. Nelson.]

In respect to the deed executed by the deceased, the appellant's first proposition is that it was secretly made pending the treaty of marriage between deceased and herself, and in fraud of her subsequently acquired marital rights. The subject of the rights of a wife under the circumstances here affirmed by the appellant had careful and repeated consideration by this court in *Kelly v. McGrath*, 70 Ala. 75, 45 Am. Rep. 75. It was there determined that a conveyance of his lands by the husband, executed in contemplation of marriage, without the knowledge of his intended wife, and intended to prevent her rights of dower and homestead from attaching to the lands, is a fraud upon the rights of the wife on marriage, against which a court of equity will grant relief. The general principle so announced is not now drawn into question, but the parties are in irreconcilable conflict over the facts which would bring appellant's case under the influence of the principle stated. The proof as to the time from which the engagement of marriage must be dated not unnaturally rests upon the sole testimony of the appellant, and is subject only to such discredit as may arise from interest, some evident errors into which she has fallen in respect to other matters, and the alleged general lack of verisimilitude in her story. She fixes the date when Squire D. Brown began to visit her in May, 1893, and of the engagement to marry in July of the same year. The marriage was solemnized seven months later. The deed complained of bears date, as we have seen, December 1, 1892. Appellant's contention is that it was, in fact, executed and delivered in the fall of 1893, and antedated so as to carry into effect the purpose common to her intended husband and his son by a former marriage, then a man of about the same age with the appellant. Appellee's contention is that the evidence

26—164

affords no sufficient justification for a decree which would fix the date of the execution of the deed at a time different from that shown on its face. When there are no indications of falsity on the face of a deed, the presumption of law is that it has been executed upon the day of its date. The presumption is controllable, of course, by evidence aliunde, but the mere suggestion of fraud or falsity does not put upon the party producing it the burden of proving that the deed was actually made upon the day of its date.—*Smith v. Porter,* 10 Gray (Mass.) 66; *Pullen v. Hutchinson,* 25 Me. 249; *Costigan v. Gould,* 5 Denio (N. Y.) 290; *McFarlane v. Louden,* 99 Wis. 620, 75 N. W. 394, 67 Am. St. Rep. 883; *Conley v. Finn,* 171 Mass. 70, 50 N. E. 460, 68 Am. St. Rep. 399; *Aldridge v. Bank of Decatur,* 17 Ala. 47; *Hauerwas v. Goodloe,* 101 Ala. 162, 13 South. 167. It would serve no useful purpose to enter upon a discussion in detail of the voluminous testimony and the widely variant estimates put upon it by opposing counsel, nor is it permissible that this opinion be spread over the pages necessary to contain such a discussion.

The testimony has had careful consideration, and with this, and some observations on its broadest phases, the parties must be content. It appears that months before Squire D. Brown began to visit appellant an occasion arose upon which men frequently hunt cover for their property. He was surety on the official bond of King, the sheriff of Tuscaloosa county, against whom a summary motion was pending and other suits threatened as he knew. In the fall of 1892 King was approaching the end of his term as sheriff, and had been elected for clerk of the circuit court. Squire D. Brown consulted an attorney as to how he might evade liability. Being informed that no evasion was possible, he announced his expectation that he would be re-

[Nelson v. Brown, and Brown v. Nelson.]

quested to sign King's bond as circuit clerk, his inability to refuse him, and his determination to evade the risk by conveying his property to his son Joe, so that it would be safe from such liability and to this attorney he announced at a time prior to his second marriage that he had conveyed his property. In April, 1903, Brown signed the bond of King as circuit clerk. In the spring of that year the grand jury was investigating the solvency of King's bond, and at that time Brown stated to the witness Kyle, who has since then served a term as sheriff of the county, that he had given his property to his son Joe. There does not appear to be the slightest reason for doubting the perfect candor of Judge Foster or Sheriff Kyle, the two witnesses who established the foregoing facts. If the occasion arose which would reasonably account for the grantor's conveyance of his property at the time it purports to have been made, on a theory totally different from that propounded by the appellant, and he then announced his desire to have it made for the purpose of meeting that occasion, and subsequently declared that his purpose had been carried into effect, and all this transpired before the time when, so far as the evidence shows, he may have conceived the notion of marrying appellant—certainly before the agreement to marry—it would seem to require some cogent countervailing evidence to induce the conclusion that the grantor had not accomplished so easily attainable a purpose when and as he desired. The general conclusion that Squire D. Brown conveyed his property to his son, the appellee, in the fall of 1892 or the winter of 1892-93, is also borne out by the testimony of the appellee, and that of the witnesses Collins, Anna Brown, Riley, Duren, and Keene, who establish the fact as clearly as might in reason be expected after the lapse of 16 years, during which the

matter had not been brought into question. We do not mean to suggest that the testimony to sustain appellee's case is without discrepancies. Appellant, indeed, plants her case as to this deed in large part upon the lapses of the witnesses Collins and Anna Brown. But in our opinion the appellant's argument just here is too critical. It requires too much of the appellee. It concedes too little of honest purpose to appellee's witnesses. It leaves out of account that appellee and his witnesses cannot be expected to testify to an old transaction with as accurate recollection as might be expected of Squire D. Brown if he were able to testify in his own behalf. To us there does not seem to be any serious reason for doubting that the general effect of the testimony of the other witnesses is to sustain the inference necessarily following the testimony of Foster and Kyle. In this connection we considered also (1) the fact that the lands in question were assessed to Squire D. Brown for taxation during the year 1893; (2) that Squire D. took a deed of 40 acres from one Sellers on December 6, 1892, which land was not included in the deed in controversy; and (3) that the deed in controversy included 200 acres of land, a deed for which Squire D. took from H. B. Foster on May 1, 1893. There is probative force in these facts, but it is by no. means overwhelming, and is weakened to some degree by the following considerations: (1) The date of the assessment does not appear, nor does it appear by whom it was made, nor would the fact that it had been made by Squire D. Brown himself be insuperable, if it so appered. (2) The Sellers deed was of land worth the comparatively trifling sum of $100, and, if a question may answer a doubt, it may be asked why the deed to appellee, if made in the latter part of 1893, as appellant contends, did not contain the land bought from

Sellers. (3) Foster's deed conveys his interest in 200 acres of land for the sum of $10. We perhaps might infer that Squire D. acquired his real title from some other source and at another time. On consideration of the whole evidence touching this question, we conclude that the deed dated December 1, 1892, must be taken as executed and delivered on that day, and, in consequence, that the appellant's attack upon it, made the subject of what has heretofore been said, must fail.

Appellant further insists that she must have relief against the deed for the reason that, though made on the day of its date, it was not recorded until after her marriage to the grantor. In other words, she claims protection under the statute of registration against the unrecorded conveyance as a bona fide purchaser for value. Counsel concede that this proposition goes somewhat farther than any decided case, but insists that it is sound upon principle. As between the immediate parties, marriage is in law a civil contract, and is everywhere held to be a valuable consideration. But it is valuable in ways differentiated from that valuable consideration which will support a contract in that ordinarily the word "valuable" signifies that the consideration so described is pecuniary, or convertible into money. To this marriage is an exception.—1 Parsons' Contr. 468. Marriage has hardly yet been reduced to the level of a contract or bargain and sale, nor do we find that it has ever been held that the statute of registration is intended to advise persons contemplating matrimony of the property and contract status of the other party to the contemplated engagement. It is reprehensible for either party to conceal the fact that he or she does not own large properties upon the faith of the reputed ownership of which, in part at least the other may properly enter into an agreement of mar-

riage but the statute for the registration of convey-
ances, while intended to protect purchasers for valua-
ble considerations, mortgagees, and judgment credi-
tors, without notice, cannot be given that enlarged con-
struction which would include persons entering into a
contract of marriage. As was observed by Judge Stone
in *Wood v. Lake,* 62 Ala. 489.: "We should endanger
if not impair the usefulness of a very salutary statute
enacted to prevent fraud if we were to travel out in
search of an intention in policy not expressed or im-
plied in the words of the statute." In *Derry v. Derry,*
74 Ind. 560, cited by appellant in support of her con-
tention that her asserted dower right is within the pro-
tection of the statute, it was said that marriage is a
valuable consideration, and a married woman is re-
garded as a purchaser for a valuable consideration of
all property, which accrues to her by virtue of the mar-
riage, or by virtue of any valid antenuptial agreement.
In that case the husband had taken title in himself to
land purchased with his first wife's money, and it was
held that the second wife took by descent, and not by
purchase, and was bound by the trust, whether she had
any notice of it or not. The other case cited by appel-
lant.—*Brooks v. McMeekin,* 37 S. C. 285, 15 S. E. 1019
—falls squarely withing the contention herein first con-
sidered; that is to say, the conveyance there was made
in fraud of the rights of the prospective wife after the
agreement to marry had been entered into. So that
neither case directly or analogically supports the con-
tention to which it is cited.

In *Richardson v. Skolfield,* 45 Me. 389, the widow de-
manded her dower against an unrecorded mortgage.
The court said: "The demandant had no right in the
land which could be affected by the matter of the regis-
try of the mortgage. Her inchoate right of dower was

no more a right of dower in the land than is an acorn an oak. It was immaterial to her, so far as her legal rights were concerned, whether the mortgage was recorded or not." To the same effect in *Blood v Blood*, 23 Pick. (Mass.) 80. See, also, *Champlin v. Champlin*, 16 R. I. 314, 15 Atl. 85.

In this state, at a time when marriage vested the, wife's personal property in the husband, it was held by this court that the fact of marriage without more did not constitute the husband a purchaser within the contemplation of that clause of the statute of frauds which then declared that "when any loan of goods and chattels shall be pretended to have been made to any person with whom, or those claiming under them, possession shall have remained for the space of three years, without demand made and pursued by due course of law, on the part of the pretended lender, etc., the same shall be taken as to the creditors and purchasers of the person aforesaid so remaining in posses-. sion, to be fraudulent within this act, and the absolute. property is with the possession, unless such loan, etc., be declared by will or deed in writing, proved and recorded." It was readily conceded that marriage is a valuable consideration to support a contract, and that the husband became by his marriage in a certain technical sense a purchaser, or came by his wife's property by purchase, but it was said to be clear that the word "purchaser" in the statute was used in its popular sense, and meant one who acquired property by bargain and sale for a valuable consideration.—*Perry v. Graham*, 18 Ala. 822. And in an earlier case this court said that the wife could not with any propriety be regarded as the purchaser of her husband's estate by the simple act of marriage.—*Gibson v. Carson*, 3 Ala. 421. We think, therefore, that this alternative contention can be of no avail to the appellant.

The conveyance, then, having been made prior to the agreement to marry and without reference to any anticipated rights of the prospective wife, it was valid at the time, and its subsequent withholding from record, and the fact that it was voluntary, had not the effect to impair its validity, and the chancellor correctly so ruled.

The attack up the quitclaim of June 11, 1906, which attack was sustained by the chancellor, proceeded upon two theories: (1) That it was procured by actual fraud; and (2) that it was constructively fraudulent because affected by the confidential relation then existing between the parties. If the parties to this deed stood to each other in the ordinary relation of grantor and grantee, the testimony of the witness Squires and Burchfield, not to mention the testimony of the grantee, would be effective to disprove the charge of actual fraud. These witnesses established to our reasonable satisfaction that Mrs. Nelson well understood the nature and effect of the quitclaim generally, and that if she did not understand that it conveyed her interest in more land than her husband had conveyed to his son that defect in her understanding of the transaction must be attributed to her lack of due diligence as a free agent. We cannot in the evidence find that she was induced to the execution of the deed by any actually fraudulent misrepresentations or devices of the grantee therein. The charge of fraud constructive merely must, however, be disposed of on different principles with a different result.

The law presumes the exercise of undue influence in transactions inter vivos where confiedential relations exist between the parties, and puts upon the donee, when shown to be the dominant party in the relation, the burden of repelling the presumption by competent

and satisfactory evidence.—*Hutcheson v. Bibb*, 142 Ala. 586, 38 South. 754. This burden is usually dis-, charged, as is noted in the case just cited, by showing that the grantor had the benefit of competent and independent advice. True enough, the relation of stepson and stepmother is not one of those technical relations from which trust and confidence are presumed by law to arise. But it may have been, in fact, a relation of that character, for the principle invoked extends to all persons who occupy a position of trust and confidence, of influence and independence in fact, although not perhaps in law.—*Cannon v. Gilmer*, 135 Ala. 302, 33 South. 659; 2 Pom. Eq. Jur. § 963. The burden of proving the relation rests in this case upon the grantor who asserts its existence. The facts may be outlined as follows: Joe D. Brown, the grantee, and his stepmother, were of about the same age. He was an active man of considerable estate, most of which had been given to him by his father previous to the latter's second marriage. She, of humble origin and meanly educated, though the widow of a man of good estate, for considerable time accepted a position of dependence upon her stepson as a matter of course. During the life of her husband, her stepson had treated her with affection and consideration. Her husband on his deathbed had committed her to the care of his son. The latter supplied her needs, and at times offered her money in excess of what she cared to accept. The management of the affairs of the estate of her deceased husband was committed by her without any sort of reserve to his son, while his widow depended upon the son for current necessities as though a member of his immediate family. His conduct by strong implication, at least, asserted his beneficial ownership of the entire estate left by his father, and that his contributions to his stepmother's support and maintenance were of grace, and not demandable as of right.

[Nelson v. Brown, and Brown v. Nelson.]

In this situation she acquiesced. It does not detract from this impression of her dependence to note that the deed here in question was grossly improvident, conveying her interest in several hundred acres of land, over and above that which her husband had deeded to his son, on a nominal pecuniary consideration and for love and affection. Cross-appellant is able to point out some expressions falling from the cross-appellee when testifying as witness in her own behalf which indicate a lively appreciation of her situation and her rights. But this was after another influence had intervened, was after her rights were being asserted, and speaks her mind at a later time and at the time of her deposition rather than at the time of the execution of the deed. At any rate, upon a survey of the situation, we are of opinion that relations of confidence and trust in which the cross-appellant was the dominant party existed at the time of the execution of the quitclaim. This condition established, it becomes the office of the court to consider with a jealous regard for the rights of the defendant party, and the burden devolved upon the grantee to show that the independence of the grantor had been established at the time of the transaction. In this the cross-appellant has failed, and, in consequence, the deed here spoken of was properly avoided by the chancellor's decree.

This, by necessary conclusion, disposes of the subsidiary questions discussed, and must result in an affirmance of the decree of the chancery court on both appeals.

Let each party be taxed with one-half the costs of this appeal.

Affirmed on both appeals.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.