(No. 27436.—)

ANNA C. ELLET, Appellant, *vs.* HOMER FARMER *et al.,*
Appellees.

*Opinion filed November 16, 1943.*

A. D. MORGAN, for appellant.

D. L. DUTY, and CHARLES D. WINTERS, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

May 6, 1936, Phillip Ellet, a resident of the village of Blairsville, in Williamson county, by three warranty deeds, conveyed to his nephew, Homer Farmer, buildings described as the post-office building, creamhouse and workshop, and a farm of forty acres, reserving, however, all mineral rights in the farm, and to his niece, Judith Farmer Ralls, a square-topped house, described as the square house. The grantor's first wife with whom he had lived thirty years had died two months previously, and, the nephew and niece, it appears, were Ellet's only heirs-at-law. Homer Farmer lived on the farm and Judith Ralls lived in the post-office building with her uncle. Later, she moved into the house on the property deeded to her. Homer Farmer caused the deed to the farm to be recorded on June 24, 1941. The deed conveying the square house to Judith Ralls was placed of record December 10, 1941, and the third deed conveying the post-office building, creamhouse and workshop to Homer Farmer was not recorded until January 2, 1942, after Ellet's death. The deeds were voluntary conveyances made without consideration. September 28, 1936, Harry Hart, the third husband of Anna Hart, died. November 15, 1936, Ellet visited Anna Hart at Christopher, Illinois, and, according to her, brought up the subject of marriage at their first meeting. A courtship of several months culminated in the marriage of Phillip Ellet and Anna Hart on May 22, 1937. They lived together as husband and wife until December 26, 1941, when Ellet died. His widow was appointed administratrix

of his estate and, on January 22, 1942, the county court approved a widow's award of $500. Ellet's personal estate is admittedly insufficient to pay the award and other claims in full.

The plaintiff, Anna Ellet, on January 24, 1942, filed her complaint in the circuit court of Williamson county against the defendants, Homer Farmer and Judith Farmer Ralls. By her complaint, plaintiff alleged that prior to their marriage Ellet represented to her that he owned the property which he had given to his nephew and niece; that throughout their married life he had possession and control of the property and claimed to be its owner; that after Ellet's death she learned of the conveyances of his real property to defendants; that the deeds were without consideration and in fraud of her rights as his wife and surviving widow, and that, under section 11 of the Probate Act, (Ill. Rev. Stat. 1943, chap. 3, par. 162,) she was entitled to an undivided one-half interest in the real estate in controversy and, under sections 1 and 2 of the Homestead Act, (Ill. Rev. Stat. 1943, chap. 52, pars. 1, 2,) to the possession of the post-office building, the creamhouse and workshop as her homestead. The relief sought, so far as relevant, was a decree (1) setting aside and declaring void as to her the deeds executed by Ellet to defendants and (2) awarding her the post-office building, the creamhouse and the workshop as a homestead. Defendants answered the complaint, denying its material allegations and asserting, on the other hand, that as lawful owners of the property, they enjoyed the right to do as they pleased with the real estate and that plaintiff had no interest whatsoever in any of the property. Considerable evidence was heard, and the chancellor entered a decree finding that the deeds executed by Ellet to the real estate involved in this litigation were valid and not executed with the intention and for the purpose of defrauding plaintiff and defeating her of any marital rights whatsoever. Accordingly, the

decree dismissed plaintiff's complaint, so far as it affected the real estate, for the want of equity. Plaintiff prosecuted an appeal to the Appellate Court for the Fourth District. The Appellate Court has transferred the cause to this court for the reason that a freehold is necessarily involved. *Ellet* v. *Farmer,* 319 Ill. App. 528.

Other facts and circumstances merit mention. Since 1912, Ellet had been postmaster of Blairsville. He devoted the greater part of his time to working in the mines and the operation of his farm about a mile distant from the village. Judith Ralls assisted him with his duties as postmaster. Subsequent to her fourth marriage, plaintiff became assistant postmaster. She testified that both prior and subsequent to her marriage with Ellet he represented that he owned the farm as well as the buildings in Blairsville and that he exercised dominion and control over all the property as if he owned it. According to her testimony, he specifically stated, upon showing her each parcel of property, that he owned it. She was corroborated by the testimony of her two brothers and sister, each of whom testified to the effect that Ellet told them he owned the property in question. Most favorable to plaintiff is her own testimony that "he always talked about needing some one to help him" and the testimony of a witness for defendants who said that shortly after the execution of the deeds Ellet told him he was thinking about obtaining a helpmate at the post office and inquired whether the witness knew of an available good woman. Ellet did not, on this occasion, mention marriage. Opposed to the testimony of plaintiff and her corroborating witnesses is the testimony of several residents of the village that they were advised of the conveyances to defendants shortly after they were made. From their testimony it appears that the entire community, with the exception of plaintiff and her relatives, was fully aware of the deeds to defendants. Further, the record discloses testimony by defendants' wit-

nesses that plaintiff herself knew of the conveyances long prior to her last husband's death. From the testimony of Jessie Boner it appears that plaintiff told her shortly after her marriage she did not know why she was living with Ellet "because he had deeded away all his property and there would be nothing left for her." John Simpkins testified that in a conversation with plaintiff prior to her husband's death she stated that "if he should die, she would not have anything, that he had deeded it all away." Albert Storme, the undertaker who had charge of the arrangements for the funeral services of Phillip Ellet, testified that plaintiff told him the amount of money to be spent would have to be determined by Homer Farmer as her husband had given him all his property "except one hog." Farmer paid the funeral expenses. The testimony of another witness for defendants identified the deeds as the same deeds which were in the possession and custody of Homer Farmer in May, 1936. Finally, it appears that after the execution and delivery to defendants of the deeds Homer Farmer paid all the taxes on the property and satisfied the mortgage indebtedness on the farm.

Upon the record thus made, plaintiff contends that the deeds executed by her fourth husband and delivered to defendants were executed with the intention and for the purpose of defrauding and defeating her of her marital rights, namely, widow's award, homestead, and a one-half interest in Ellet's real estate in lieu of dower, and that the deeds should have been set aside, so far as her marital rights are concerned. A voluntary conveyance by either party to a marriage contract, of his or her real estate, made without the knowledge of the other and on the eve, or in contemplation, of marriage, is *prima facie* a fraud upon the other's marital rights, and the burden is upon the grantee to establish its validity. (*Jones* v. *Jones,* 281 Ill. 595; *Dunbar* v. *Dunbar,* 254 Ill. 281; *Daniher* v. *Daniher,* 201 Ill. 489.) A wife is within the protection of the stat-

ute against conveyances made with intent to defraud, and a voluntary disposition of property made with the specific intent to defraud a future wife of her marital rights, dower, homestead and widow's award, is void, precisely as if the conveyance was intended to defraud future creditors. (*Knights* v. *Knights*, 300 Ill. 618; *Deke* v. *Huenkemeier*, 289 Ill. 148; *Higgins* v. *Higgins*, 219 Ill. 146.) Not every voluntary conveyance, however, is in fraud of the rights of the intended spouse. A conveyance made for the purpose of providing for the grantor's children, and not to defraud the wife or husband, where the advancement is reasonable, when considered with reference to the property of the grantor, will not be held fraudulent. (*Daniher* v. *Daniher*, 201 Ill. 489.) To set aside a conveyance made by a husband before marriage as being in fraud of the wife's marital rights, proof of actual fraudulent intent on the part of the grantor is essential, and the mere fact of concealment or secrecy is not conclusive of fraud. The time at which a man transfers his property before marriage is material in determining whether the conveyance can be deemed a fraud on the future wife's marital rights. Each case with respect to a transfer of property before marriage being a fraudulent conveyance must, of course, be considered and decided in the light of the particular factual situation. (*Jarvis* v. *Jarvis*, 286 Ill. 478.) Although it is generally held that to render invalid a transfer of property prior to marriage as a fraud on the future wife's marital rights the conveyance must have been made in contemplation of the marriage, there is authority, as plaintiff points out, holding that if a conveyance is voluntary and without consideration, and if the intention of the grantor was to defraud of her marital rights any person whom he should marry, it is immaterial, so far as the validity of the transaction is concerned, that he had not yet selected any particular person as his wife. (*Jarvis* v. *Jarvis*, 286 Ill. 478; *Higgins* v. *Higgins*, 219 Ill. 146.) As pointedly observed in the *Higgins case,* "There must be

a fraudulent intent, but it need not necessarily be directed against a particular person." These same authorities upon which plaintiff places reliance hold further that the absence of an agreement of marriage at the time of the challenged conveyance is a strong circumstance tending to disprove fraud in fact. 26 Am. Jur. Husband and Wife, sec. 189.

Application of the foregoing firmly established principles leads irresistibly to the conclusion that the conveyance by Phillip Ellet of his real estate to defendants was neither a fraud in law nor in fact upon plaintiff. The conveyances were made approximately two months after the death of Ellet's first wife and more than a year prior to his second marriage. Delicacy forbids imputing an intent to him, at this time, to defraud either a particular person whom he intended to marry or some unknown person whom he might possibly marry at a later date. Manifestly, he did not then contemplate marriage with plaintiff who was living with her third husband, Harry Hart, and, who, so far as the record discloses, was in excellent health. The evidence adduced by plaintiff does not even remotely tend to show an intent by Ellet to marry any particular person or a general intent to marry some person whom he had not yet met. In short, Ellet gave his property to his nearest relatives, the special objects of his affection, at a time when he had the undoubted right so to do.

The chancellor had the benefit of seeing and hearing the witnesses and determining the credibility of their testimony upon such matters as whether plaintiff was aware of the existence of the conveyances prior and subsequent to her marriage with Ellet. When all the facts and circumstances are considered, he was amply warranted in deciding the issues against plaintiff and in favor of defendants.

The decree of the circuit court is affirmed.

*Decree affirmed.*