**Emma LOE, Respondent,**

v.

**Gail DOWNING and Irene Downing, Appellants.**

No. 46804.

Supreme Court of Missouri,

Division No. 2.

June 8, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied July 13, 1959.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellants.

Herbert S. Brown, Trenton, for respondent.

STOCKARD, Commissioner.

In this suit in equity the defendants have appealed from the judgment of the trial court setting aside a deed to a farm of 112 acres located in Mercer County because of fraud. Title to real estate is involved. Therefore appellate jurisdiction is in this court.

Charles Loe acquired the farm by purchase in 1917. On October 2, 1933, Charles and Etta Loe executed and delivered a warranty deed to the farm to Gail and Irene Downing, husband and wife, who are the appellants herein. Gail was a nephew of Charles Loe and had been raised by him and his wife Etta in their home. There is some evidence to the effect that in 1933 Charles Loe had some creditors, or may have anticipated that he would have, and that the deed was made in an effort to delay or hinder creditors. It was this deed to Gail and Irene Downing that the trial court set aside.

Etta Loe died on December 1, 1933, and on December 24, 1934, Charles Loe and Emma Harvey were married. According to respondent, Charles Loe lived alone and so did she, and "one day he said, 'Why don't we get married? I got the farm and you have got some money. We could live without working so· hard.'" When asked if Charles Loe represented to her that he owned the farm, respondent testified that "He said, 'I got the farm,' that is just what he said. I knew that he paid

the taxes and all of that. I just thought then it was his. * * * This is all that was said."

After their marriage Charles Loe and respondent lived on the farm for ten or eleven years and then moved to Mill Grove where they bought a house, each paying half of the price, and title was taken in both their names. But, "a few years back" Charles Loe had the town property transferred to a straw party and then to respondent alone, and in consideration for this transfer, according to respondent, she returned to him a note in the amount of $750 which he had given her when he borrowed that sum at the time his first wife was ill.

During the time Charles Loe and respondent lived on the farm he exercised the usual incidents of ownership, including the making of repairs, the payment of taxes, and the execution of an oil and gas lease for the recited consideration of one dollar. At various times after he and respondent moved to town Charles Loe rented all or parts of the farm and collected the rents therèfrom, but Gail Downing testified that each time this was done it was with his knowledge and consent. At least two years before the death of Charles Loe, Gail Downing took over control and operation of the farm and paid the taxes thereon. There is evidence that in some of the previous years he gave Charles Loe the money to pay the taxes.

The warranty deed from Charles Loe and Etta Loe to appellants was recorded on January 17, 1939. Respondent admitted that in 1939 her daughter told her that she had heard that Charles Loe had sold some land, and that her daughter's informant said she had "seen it in the Princeton paper." Respondent made no inquiry to her husband about this because she thought it "was a little dab of land he had sticking around over the town." Although there is evidence to the effect that it was generally known in the community that appellants were the owners of the farm, according to respondent it was not until a few years before Charles Loe died that she first learned of the deed to appellants. She testified that in 1954 or 1955 "Johnny Mercer drove up in front of the house where we lived and said, 'Loe, why don't you sell that farm and stop worrying and working around here.' And he just spoke up and said, 'I can't as I have deeded it to Gail.' That is the first I knew of it." Respondent made no inquiry or complaint to her husband about this, and she did not discuss the matter with appellants. Her first complaint to appellants concerning their claimed ownership of the farm consisted of the filing of this suit on April 17, 1957, which was seven days after the death of Charles Loe. Subsequent to the time that respondent knew of the deed to appellants and while Charles Loe was still alive she permitted Gail Downing, with no objection on her part or assertion of an interest in the farm, to pay the insurance on the farm buildings, build lateral ditches, pay the taxes, rebuild the basement to the house, construct ponds and make various other improvements.

The trial court found that the warranty deed was given to appellants "for the purpose of defrauding the then existing creditors of Charles O. Loe, and that the continuing concealment of the existence of said deed by Charles O. Loe from [respondent], and the fact that the said Charles O. Loe continued to assert all the attributes of ownership of said farm from the date of marriage to the plaintiff until approximately two years prior to his death was a continuing fraudulent representation to the plaintiff, which if allowed to stand, would result in the defrauding of [respondent] of her marital rights of inheritance in the farm in question."

We seriously doubt if there was sufficient evidence from which it may be found that prior to the conveyance to appellants, or that by reason thereof, Charles Loe was insolvent, and that the deed was

in fraud of creditors. See Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9, and Klaber v. Booth, Mo.Sup., 49 S.W.2d 181. But, in any event, we do not see why that could be of importance in this case. "It is well established that a transfer of property, fraudulent and void as to creditors, is nevertheless valid as against the grantor and his privies in estate." Stierlin v. Teschemacher, 333 Mo. 1208, 64 S.W.2d 647, 653; 91 A.L.R. 121; Bank of New Cambria v. Briggs, 361 Mo. 723, 236 S.W.2d 289; Mongler v. Mongler, Mo.App., 57 S. W.2d 740; Charles v. White, 214 Mo. 187, 112 S.W. 545, 21 L.R.A.,N.S., 481, 127 Am.St.Rep. 674. Such fraudulent conveyances are voidable only as to creditors, and then only to the extent necessary to pay the debts. Stevenson v. Edwards, 98 Mo. 622, 12 S.W. 255. In other words, "Only a creditor who can show that he has been injured by such a conveyance can impeach it, and, to entitle him to equitable relief, it is necessary for him to show that he has been thereby deprived of his remedy at law, and is therefore compelled to resort to equity." 37 C.J.S. Fraudulent Conveyances § 62; Rowley v. Rowley, Mo.Sup., 197 S.W. 152. It was specifically held in Lange v. Lange, 133 Fla. 447, 182 So. 807, 808, that "A widow is not entitled to dower in lands, conveyed by her husband, before marriage, although such conveyance was fraudulent and void as against creditors." Assuming then, that the deed to appellants was in fraud of creditors when made, since respondent does not contend that she is a creditor of Charles Loe, and there certainly is no evidence to support such a contention if made, she has no right to have a court of equity set aside the deed for that reason.

■■■ In respondent's argument to this court she contends that the deed was an antenuptial conveyance made and executed in fraud of her marital rights. It is established in this and other states that as a general rule a voluntary conveyance of real estate made just prior to marriage by either party to the contract to marry without the knowledge of the other may constitute a fraud upon the other's marital rights. Breshears v. Breshears, 360 Mo. 1057, 232 S.W.2d 460; Noe v. Noe, 359 Mo. 867, 224 S.W.2d 77; Vordick v. Kirsch, Mo.Sup., 216 S.W. 519; Moran v. Stewart, 173 Mo. 207, 73 S.W. 177; King v. King, 184 Mo. 99, 82 S.W. 101; Rice v. Waddill, 168 Mo. 99, 67 S.W. 605; Hach v. Rollins, 158 Mo. 182, 59 S.W. 232; Ellet v. Farmer, 384 Ill. 343, 51 N.E.2d 570; Arnegaard v. Arnegaard, 7 N.D. 475, 75 N.W. 797, 41 L.R.A. 258; Annotations, 9 L.R.A.,N.S., 955; 48 L.R.A.,N.S., 518; 103 Am.St.Rep. 419; 26 Am.Jur., Husband and Wife, § 185. In this case, Charles Loe and respondent were not engaged to marry when the deed to appellants was made. In fact, he was then married to his first wife, Etta. Obviously, this was not a conveyance "on the eve" of the grantor's marriage as in Vordick v. Kirsch, supra [216 S.W. 519], and Breshears v. Breshears, supra. However, it has been stated that an antenuptial conveyance may be in fraud of marital rights and set aside even though "the particular person whom he was to marry had or had not been selected." Jarvis v. Jarvis, 286 Ill. 478, 122 N.E. 121. See, also, Higgins v. Higgins, 219 Ill. 146, 76 N.E. 86, 109 Am.St.Rep. 316; Noe v. Noe, supra; Beechley v. Beechley, 134 Iowa 75, 108 N.W. 762, 9 L.R.A.,N.S., 955, 120 Am.St.Rep. 412, 13 Ann.Cas. 101; Annotations, 48 L.R.A.,N.S., at page 518. But, in such a situation the conveyance must have been made with the express intention of defeating the marital rights of the person if and when selected for marriage. Jarvis v. Jarvis, supra; 26 Am.Jur., Husband and Wife, § 189. Several factors would properly bear on this issue of intent such as the time of the conveyance in relation to the engagement or marriage and whether the conveyance was voluntary. But another, and we think a conclusive factor in this case, is that when the conveyance was made to appellants, Charles Loe was living with his first wife and she joined in the deed, and there is not one shred of evidence to support even an in-

ference that at the time the deed was made Charles Loe had any intention of remarrying, or that he had the intent to defraud a future wife of her marital rights in the farm.

Respondent has cited Bitzenburg v. Bitzenburg, 360 Mo. 70, 226 S.W.2d 1017, 1022, and because she relies principally upon this case we shall discuss it specifically. In that case two days before the husband's *second* marriage he made a voluntary conveyance of his house without consideration to his sister. What happened to that marriage is not shown, but he subsequently married a third time and told his *third* wife that his sister held title to the house for him but that he was going to have her transfer title to them jointly. The sister conveyed title to the husband alone, and the husband had his third wife sign some papers thinking they were necessary to accomplish the transfer of title to her and her husband jointly. However, what her husband had her execute was a deed of trust on the property to secure a note payable to the sister in the amount of $5,000. The wife later sued for divorce and obtained an award of alimony pendente lite. She then brought a separate suit to cancel the note and deed of trust on the ground that they were without consideration and that the deed of trust was fraudulently obtained from her. The contention was made by the husband that the deed to his sister made prior to his marriage to his second wife could not have been in fraud of any of the rights of his third wife, and that the conveyance from his sister to him was coupled with a valid purchase money mortgage. The court held that the deed by the husband to his sister was "illusory and that it was not intended to divest him of actual ownership of the property;" that there was no consideration for the $5,000 note, that the deed of trust was obtained fraudulently from the wife; and that there was no valid purchase money mortgage. The conveyance by the sister to the husband placed the record title back in his name, and the cancellation of the fraudulent deed of trust left the property available to be levied upon by the third wife to collect her judgment for alimony pendente lite. The Bitzenburg case does not involve the issue of whether a deed made without consideration in contemplation of marriage is subject to being set aside because it is in fraud of the future wife's marital rights, and it does not involve the factual situation we have in this case where the instrument challenged on the basis it was in fraud of the widow's marital rights was executed by the grantor while married to another person.

We have found only one case that is in any way comparable to the facts here. In Ellet v. Farmer, supra [384 Ill. 343, 51 N.E.2d 570, 573], two months after the death of his first wife Phillip Ellet conveyed substantially all of his property by two deeds without consideration to his niece and nephew. One year later Ellet married Anna Hart, who at the time of the execution of the deeds was living with her third husband. The deeds were not recorded until at least four years after the marriage, one just before the grantor's death and the other immediately thereafter. The court held that "Delicacy forbids imputing an intent to him, at this time, to defraud either a particular person whom he intended to marry or some unknown person whom he might possibly marry at a later date," and that "manifestly" he did not then contemplate marriage with plaintiff who was married to and living with her third husband. In that case Ellet was eligible to marry someone when he executed the deeds, but in this case when the deed to appellants was executed, Charles Loe was not eligible to marry respondent or any one else.

An interesting case on the question of proof of intent to defraud a future wife of marital rights, in view of the contentions made here by respondent that the deed to appellants was made in fraud of creditors, is Nelson v. Brown, 164 Ala. 397, 51 So. 360, 137 Am.St.Rep. 61. There a widow sought to have a voluntary deed, which had

been executed fourteen months prior to marriage, by Squire Brown to his son (by a former marriage) set aside on the ground that it was made in fraud of her marital rights. The evidence established that Squire Brown was surety on the official bonds of one King while sheriff and also while circuit clerk, and that the deed to the son was made in an obvious attempt to dispose of his property and evade responsibility as surety on the bonds. The court held that proof of that purpose in making the deed established that the transfer was not made with the intent to defraud the subsequent wife of her marital rights.

██ We can find no justification to impute an intent to Charles Loe to defraud respondent of her marital rights in his real estate when at the time of the conveyance of the farm to his nephew he was married to and living with his first wife to whom he had been married for many years, and as far as is shown by the record, had no intention of being married to respondent or any person other than his first wife. The deed is not subject to attack by respondent for this reason.

The trial court apparently based its judgment setting aside the deed, at least in part, on its finding that Charles Loe remained in possession of the farm and did not tell respondent when he married her that over a year previously thereto he had conveyed the title to the farm to appellants. It concluded that this constituted a "continuing fraudulent representation" to respondent which resulted in defrauding her of her marital rights in the farm.

There is no evidence that appellants participated in or even knew of the misrepresentation, if in fact it was, of Charles Loe to respondent except that they knew Charles Loe was in possession of the farm. Therefore, assuming that he did fraudulently represent to respondent in December 1934 that he owned the farm when in fact he had conveyed it to appellants in October 1933 by a deed which he was not authorized to recall or challenge, the question thus

presented is whether this fraudulent representation will revert back to the otherwise valid deed and authorize a court of equity to set it aside. Respondent has cited no case authorizing such action, and we have found none.

██ This deed from Charles Loe to appellants, although not recorded until 1939, was valid between the parties thereto including Charles Loe, Section 442.400 RS Mo 1949, V.A.M.S.; Southern v. Southern, Mo.Sup., 52 S.W.2d 868, and the only right of inheritance or interest in the land that respondent could have acquired was by reason of her subsequent marriage to Charles Loe more than a year later. If at that time Charles Loe had no legal or equitable interest in the land, respondent acquired none by virtue of the marriage, absent a conveyance made in contemplation of marriage with the intent to defeat her marital rights. While the fraudulent representations by Charles Loe may have given rise to a cause of action for damages, a matter we do not decide, they cannot operate retroactively to invalidate an otherwise valid transfer of title to appellants made more than a year previous thereto. Respondent was not a bona fide purchaser for value of any interest in the land, Nelson v. Brown, supra [164 Ala. 397, 51 So. 360, 137 Am.St.Rep. 61], and by reason of marriage she is not entitled to any interest in land which her husband conveyed away by valid deed prior thereto.

We must necessarily conclude that it is immaterial under the facts of this case, insofar as respondent is concerned, that in 1933 the deed may have been made in fraud of creditors; that the evidence does not establish that the deed was made by Charles Loe with the intent to defraud respondent or any other person of marital rights in the farm; and that the fraudulent representations, if in fact they were, of Charles Loe to respondent more than a year subsequent to the execution of the deed and at the time of his marriage to her cannot operate to set aside the otherwise valid deed.

 

The judgment of the trial court is reversed and the cause remanded with directions that respondent's petition be dismissed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.